[Civ. No. 3224. Third Appellate District.—April 24, 1928.]

M. F. TREBILCOX, Appellant, v. CITY OF SACRA-
MENTO (a Municipal Corporation), Respondent.

Ralph H. Lewis for Appellant.

R. L. Shinn, City Attorney, and Charles J. Hasman for Respondent.

HART, J.—The plaintiff by this action sued the defendant to recover the total sum of $475 as for four different claims alleged to be owing by the latter to as many different alleged claimants, and which claims, it is alleged, were severally assigned to plaintiff by such claimants prior to the commencement of this action. A demurrer to the complaint was sustained without leave to amend. From the judgment thereupon entered plaintiff appeals.

The plaintiff's assignors are four different incorporated athletic clubs, the principal place of business of each being the City of Sacramento. The specific object of this action is to recover from said city certain sums of money paid to the defendant as for license fees for managing, conducting and carrying on boxing and wrestling exhibitions in said city after a certain initiative statute, hereinafter to be referred to, went into effect. The allegations of the four causes of action set forth in the complaint, are, with the exception of the parties assigning their claims to the plaintiff and the respective sums claimed by said assignors, substantially the same.

The contention of the plaintiff is that the ordinance by authority of the provisions of which the assignors of the plaintiff were required to pay to said city, as a license fee or tax, the moneys here sued for, is a regulatory measure, and, therefore, unless it be true that the "regulation" of boxing and wrestling matches be a "municipal affair," it was and is superseded or invalidated by an initiative statute approved by the electors of the state at the general election on the fourth day of November, 1924, and which became effective or operative on the seventeenth day of December, 1924 [Stats. 1925, p. lxxxix].

An ordinance of the City of Sacramento providing for licensing and regulating the carrying on of certain professions, trades, callings, and occupations within said city was passed by the legislative body thereof on October 1, 1921, and is designated and known as "Ordinance No. 18, Fourth Series, Ordinances of the City of Sacramento." By virtue of its own terms it went into effect October 1, 1921, as an emergency measure. On the eleventh day of May, 1922, the city council of said city enacted an ordinance designated and known as "Ordinance No. 73, Fourth Series, Ordinances of

the City of Sacramento," adding to Ordinance No. 18, fourth series, the following section, designated in said Ordinance No. 18 as "Section 31": "For every person, firm or corporation conducting, managing or carrying on a boxing or wrestling exhibition, $25.00 for each exhibition, when a fee of admission is charged."

Said ordinance is entitled: "An ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations; providing a penalty for the violation of this ordinance and making this an emergency measure," etc. It provides for the imposition of a license tax upon a long list of callings and occupations, many, if not most, of which are not subject to regulation.

The statute above referred to and which it is claimed superseded the ordinance in question, created a board to be known as the "State Athletic Commission of California," consisting of three members, to be appointed by the governor. It authorizes the maintenance of the business of the carrying on of boxing contests, sparring matches, or exhibitions for prizes or purses, or where an admission fee is received. It vests the commission in its discretion with the authority to issue, "and at its pleasure revoke," a license to conduct, hold, or give boxing, sparring and wrestling contests, matches and exhibitions, where an admission fee is received, to any club, corporation, organization, or association which holds a lease of a term of at least one year of the premises in which such match, contest or exhibition is to be held, etc. It prescribes the procedure to be followed to obtain a license to conduct such matches or contests or exhibitions, and provides that there shall accompany the applications for such permits the annual fee, the amount of which must be in accord with that fixed by the statute for such business transacted in a city of the population of Sacramento. There are certain regulatory provisions regarding the manner in which such matches and contests are to be conducted.

The City of Sacramento is, and for many years has been, operating as a municipal corporation under a freeholders' charter. The charter under which it is now operating was ratified by the electors of said city on the thirtieth day of November, 1920, and ratified by the legislature at its regular

biennial session in 1921. Among the powers thereby granted to the city council or the legislative body of said city is the following (sec. 12, art. III): "To license for purposes of regulation and revenue all and every kind of business not prohibited by law to be transacted or carried on in the city; to fix the rates of license upon the same and to provide for the collection of such license by suit or otherwise; and, when not unlawful, to license, tax, regulate, prohibit, or suppress all tippling houses, dramshops, saloons, bars, bar rooms, raffles, hawkers, peddlers, pawnbrokers, refreshment or coffee or soft drink stands, booths and sheds."

The legislature of 1901 added to the Political Code, section 3366 (Stats. 1901, p. 635), which, among other things, provides: "Boards of supervisors of the counties of the state, and the legislative bodies of incorporated cities and towns therein, shall, in the exercise of their police powers, and for the purpose of regulation as herein provided, and not otherwise, have the power to license all and every kind of business not prohibited by law," etc.

Section 6, article XI, of the constitution, prior to November, 1896, provided that all "cities and towns . . . and all charters thereof framed or adopted by authority of the Constitution" were "subject to and controlled by general laws." Under that provision of the constitution, section 3366 of the Political Code, being a general law, controlled as to all matters or subjects pertaining or legally appropriate to the government of a municipal corporation to which it related; and under that section by force of the limitation upon the power of incorporated cities and towns to impose license fees upon every business, calling, and occupation transacted or carried on within the municipal limits thereof for the purpose of regulation only, necessarily excluded the right of such cities and towns to impose such licenses for the purposes of revenue. In the year 1896, however, the electors of the state approved and adopted an amendment to section 6 of article XI of the constitution. This amendment, in so far as it concerned the present consideration, read as follows: "All charters thereof framed or adopted by authority of this Constitution, except in municipal affairs, shall be subject to and controlled by general laws."

In 1914 the electors of the state approved and ratified an amendment to said section and article as it read after the adoption of the amendment of 1896. The particular language of the amendment of 1914 pertinent to the present inquiry reads as follows: "Cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this Constitution may amend their charters in the manner authorized by this Constitution so as to become likewise empowered hereunder, to make and to enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws."

There is no change made, except in form of language, by the amendment of section 6 of article XI of 1914 with regard to immunity of cities organized under and governed by freeholders' charters from control or interference by general laws in matters which are municipal affairs guaranteed to such cities by the amendment of said provision of the constitution in the year 1896. Therefore, the cases construing the meaning and scope of the amendment of 1896 apply also to the amendment of the section in 1914.

In *Fragley* v. *Phelan*, 126 Cal. 383, 387 [58 Pac. 923, 925], speaking of the phrase "municipal affairs," as used in said amendment, the supreme court said: "For the purpose of getting at the true significance of these words, there is no brighter light to be shed upon them than is disclosed by a consideration of the reasons which moved the legislature to propose the amendment and the people to adopt it. What was the evil to be remedied? What was the good to be gained by this amendment? The answer is common, everyday history. It was to prevent existing provisions of charters from being frittered away by general laws. It was to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way. It was enacted upon the principle that the municipality itself knew better what it wanted and needed than did the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs."

The only two questions here for decision are: 1. Is the provision of the ordinance in question exacting the payment of a license tax from persons engaged in the business of carrying on sparring, wrestling, or boxing matches or contests, or the ordinance itself, a regulatory measure? If not, is the power conferred on the legislative body of the City of Sacramento by its charter (a freeholders' charter) to license for purposes of revenue those who hold and carry on boxing and wrestling matches or contests within the limits of said city a "municipal affair"? The ordinance in question, as we have above stated, provides for the collection of license fees for the maintenance, conducting, and carrying on of a large number of different callings, occupations, and businesses. A large number of such callings or businesses are not, as also above stated, appropriate or subject to regulation. Section 31 of said ordinance relating to boxing and wrestling contests contains no provision regulating the manner of conducting such business, or any regulatory provisions at all. As will be seen, it merely prescribes the amount of the license fee to be paid by all engaged in carrying on such business. ■ Counsel says that as evidence of the regulatory character of the provisions of the ordinance is the power thereby vested in the city council to revoke any license issued to any person to maintain a place where boxing and wrestling contests are held. But the power to revoke is not necessarily evidence that the ordinance is a regulatory measure. The proper authorities may, according to legal processes or procedure, revoke a license issued to a person to carry on any kind of business, whether subject to regulation or not, if it be shown that the purpose for which the license has been issued is being abused to the detriment of the public, or is used for a purpose wholly foreign to that for which it was issued. If, for illustration, a license is issued to a person to carry on the business of a cafe or restaurant and it turns out that the person to whom the license was issued is or has been, in connection with the restaurant business, engaged in keeping and selling prohibited liquors, and so violating the law, of course his license to conduct the restaurant may and should be revoked. The same would be true as to the keeper of a hotel, or a mercantile business, or, indeed, of persons carrying on any kind of legitimate and necessary business.

Counsel declares, however, that the title of the ordinance clearly indicates that the purpose of the ordinance is that of regulation. ▮ The ordinance, as shown above, is entitled, in part, "An ordinance providing for licensing and regulating of certain professions, trades," etc. City ordinances are not required to have a title. Or, as is stated in *In re Johnson,* 47 Cal. App. 465, 467 [190 Pac. 852] : "A title is not an indispensable part of an ordinance. It may have a defective title," but this would not or does not invalidate the force of the ordinance. (See, also, *Ex parte Haskell,* 112 Cal. 412 [32 L. R. A. 527, 44 Pac. 725] ; *Ex parte Young,* 154 Cal. 317 [22 L. R. A. (N. S.) 330, 97 Pac. 822].) The title of an ordinance in no manner or degree controls the subject matter thereof, or is to be taken as conclusive as to its purpose or the character of its provisions.

▮ There are, it is true, certain provisions in the ordinance regarding the business of undertakers and that of retailers of nonintoxicating alcoholic beverages, as to which businesses certain conditions are imposed upon any person intending to engage therein as a prerequisite to his right to receive a license. By those provisions, persons desiring and intending to engage in such businesses are required to file a verified application before the city council before a permit to carry on such businesses may be granted. Said provisions may in their nature be more or less regulatory, but they are confined in their application to the businesses mentioned. Section 31 of the ordinance, authorizing licenses to be issued to persons to carry on the business of boxing, sparring, or wrestling matches, does not, as is to be seen, contain any conditions which must be complied with as a prerequisite to the right of any person applying for a license for such purpose to have the same issued to him. And section 31 is the only section or place in the ordinance where boxing and wrestling matches are referred to. As we have seen, the ordinance in question deals with a large variety of businesses, callings and occupations each in separate and distinct sections. The one section has no relation to or connection with the other, in so far as the subject matter thereof is concerned. As many ordinances as there are callings and occupations dealt with in the ordinance in question, each such ordinance providing for the payment of

a license fee by any person engaging in any particular business or occupation thus separately legislated upon, could, of course, legally have been passed. But, as a matter of convenience, it was proper and legal for the city council to adopt, as it did, the omnibus form of providing for the payment of licenses for the carrying on of each and all of the numerous businesses and occupations mentioned in the ordinance under attack here. It follows from all these considerations that if one or more sections of the ordinance were deemed to involve the unlawful exercise of the taxing power conferred on the city council of the City of Sacramento by its charter, it would not for that reason result that the entire ordinance was invalid. This is merely the application of the familiar rule that if a part of a statute be invalid, the other parts, if in no measure or sense dependent for their validity upon the invalid part, will remain undisturbed and subject to enforcement.

 There can be no possible doubt that the power to tax for all purposes conferred upon the legislative body of a municipal corporation governed by a freeholders' charter is strictly a "municipal affair" within the intent and contemplation of section 6 of article XI of the constitution. Indeed, it would be difficult to conceive what is "a municipal affair" if the power vested in a municipality by its charter to raise and collect revenues for the support of its local government does not come within the phrase "municipal affairs," as it is used in the constitution. But this proposition has been thoroughly and ably and clearly considered by the supreme court in a number of cases. The case of *Ex parte Braun,* 141 Cal. 204 [74 Pac. 780], the opinion by former Chief Justice Angellotti, exhaustively considers the question. Not only that, but the opinion discusses and decides nearly every question involved in the present case in a case in which the general facts are very much the same as those of the one now before us. Braun was arrested and held by the chief of police of the City of Los Angeles for trial before the police court of that city for "wilfully and unlawfully" conducting, managing, and carrying on the "business of a wholesale liquor dealer without first having procured a license from the city of Los Angeles so to do." The charge for which the petitioner thus was held was founded on an ordinance of said city

entitled: "An ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings, and occupations carried on within the limits of the city of Los Angeles," and was adopted and passed February 28, 1903. The petitioner asked for his release by the supreme court through a writ of *habeas corpus*. The principal question presented in the proceeding before the supreme court was whether the collection of a license tax for revenue purposes under the provisions of the Los Angeles charter (a freeholders' charter) was a "municipal affair." In the opinion it is said:

"The meaning of the term 'municipal affairs,' as these words are used in the constitutional amendment of 1896, has been considered in several decisions of this court. In discussing the effect of this amendment, this court has always recognized the reason that impelled its adoption. After much public discussion, and upon an exhaustive consideration of the question, it had been decided by this court that the legislature, prior to this amendment, had power, by general laws, to supersede, or take away, without the consent of the municipality, the powers conferred upon it by a special charter. (*Thomason* v. *Ashworth*, 73 Cal. 73 [14 Pac. 615]; *People* v. *Henshaw*, 76 Cal. 436 [18 Pac. 413]; *Davies* v. *Los Angeles*, 86 Cal. 37 [24 Pac. 771].) These decisions had demonstrated that the power given by the constitution to cities to frame charters for their own government for the purpose, as was said in *People* v. *Hoge*, 55 Cal. 612, 618, of emancipating them from the authority and control formerly exercised over them by the legislature in municipal matters, were unavailing if such charters could at once be superseded by any general legislative enactment. Under these circumstances the section of the Constitution providing that all cities and towns and the charters thereof should be subject to and controlled by general laws was amended by the addition of the words 'except in municipal affairs.' "

Again in the same opinion the court declares: "The words used in the amendment are words of wide import, broad enough to include all powers appropriate for a municipality to possess and actually conferred upon it by the sovereign power. The collection of a license tax for revenue purposes is a well recognized exercise of the taxing power. (See

*People* v. *Martin,* 60 Cal. 153.) That the power of taxation is a power appropriate for a municipality to possess is too obvious to merit discussion. As was said by Mr. Justice Field in *United States* v. *New Orleans,* 98 U. S. 381 [25 L. Ed. 225]: 'A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose.' It was further said in that case that: 'When such a corporation is created, the power of taxation is vested in it, as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of these purposes, its authorities, however limited the corporation, must have power to raise money and control its expenditure.' "

The court concludes by saying that the power to collect license taxes for revenue purposes was "actually conferred upon the city of Los Angeles for municipal purposes by the charter framed for its government, under the provisions of section 8 of article XI of the constitution, and that such power is a 'municipal affair' within the meaning of those words as used in section 6 of article XI of the constitution, and cannot be withdrawn or abrogated by the legislature. Section 3366 of the Political Code is, therefore, inapplicable to that city."

■ Counsel for the plaintiff, in his briefs, refers to many cases which he claims support his position that the ordinance in question is invalid. Some of the cases so cited harmonize rather than disagree with the position of the defendant. It is true, however, that the case of *Angelopulos* v. *Bottorff,* 76 Cal. App. 621 [245 Pac. 447], decided by this court February 24, 1926, the opinion being written by Justice Plummer, holds that the act of the city council of the City of Sacramento in revoking, without notice or a hearing, the plaintiff's license to conduct a restaurant business within the limits of said city because of an alleged violation of the prohibition laws in the carrying on of said business involved the taking from the plaintiff of a property right in contravention of the "due process clause" of the state and federal constitutions, and that, for that reason, the provisions of said ordinance purporting to vest in the city council any such power was and is unconstitutional and void. The soundness of this conclusion is, of course, unim-

peachable. But the failure, if there be such failure, of the city council to provide proper procedure for coercing the payment of the license taxes exacted by said ordinance or for the punishment of any person subject to the payment of such tax for nonpayment thereof is a matter which is not involved in this case, nor is it so connected with the issues presented herein as to affect the decision thereof; for the invalidity of the provisions of the ordinance attempting to clothe the city council with power to revoke without a notice to the licensee or without giving him a hearing on the charge on which his license is proposed to be or is revoked does not, and cannot, for reasons briefly stated above, have the effect of vitiating the legal force of the provisions of said ordinance requiring the payment of a license tax for revenue by persons engaged in the prosecution of the callings or businesses therein enumerated.

The case of *Ex parte Braun* is decisive of this case in favor of the defendant.

The judgment is, accordingly, affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1928.

All the Justices concurred.