[Civ. No. 7450. Third Dist. July 27, 1948.]

REDWOOD THEATRES, INC. (a Corporation), Appellant, v. CITY OF MODESTO et al., Respondents.

Hallinan, MacInnis & Zamlock, Vincent Hallinan, James Martin MacInnis and Vernon F. Gant for Appellant.

O'Melveny & Myers, Jackson W. Chance and Rodney K. Potter, as Amici Curiae on behalf of Appellant.

Francis W. Halley, City Attorney, Eugene M. Prince, Harry C. Scott and Pillsbury, Madison & Sutro for Respondents.

THOMPSON, J.—The plaintiff, which owns and operates four moving picture theaters in Modesto, sought an injunction to restrain that city and its officers from enforcing an ordinance, number 772, New Series, adopted pursuant to the authorization of its charter, imposing a license tax of three cents for each ticket of admission sold by any of said theaters.

The complaint and amendments thereto allege that ordinance number 772, New Series, was adopted April 23, 1946, for the purpose of revenue, and prescribes penalties of fines for violation of its provisions; that the city previously adopted another ordinance, number 487, New Series, which is in full effect, also imposing license fees for conducting certain businesses, including plaintiff's theater business; that said ordinances are inapplicable to municipal affairs; that said ordinances are arbitrary, unreasonable, discriminatory, unconstitutional and void. It is alleged that plaintiff refuses to pay said taxes and that defendants threaten to enforce ordinance number 772, New Series, by arresting plaintiff's agents and employees, which will interfere with and injure its said business.

After the complaint was amended by leave of the court, a general and special demurrer to the complaint and amendments thereto was sustained without leave to amend the pleading. Judgment was rendered accordingly. From that judgment this appeal was perfected.

The appellant contends that the license taxes imposed by the two separate ordinances referred to constitute a double tax and are "cumulative"; that ordinance number 772, New Series, is discriminatory in imposing a "higher tax [on places of amusement] . . . than [that] levied upon any other type of business in the City of Modesto"; that said taxes "for revenue" are in conflict with article XI, sections 6 and 8 of the state Constitution; that they are not applicable to "municipal affairs," but are solely within the province of the state to

levy, and that said ordinances are therefore unconstitutional and void.

The city of Modesto was authorized by article III, section 4, subdivision 46 of its charter, which was duly adopted and approved (Stats. 1911, p. 1495, at p. 1502), to levy and collect license taxes for regulation or for revenue on "every kind of business" conducted therein, including moving picture theaters. That section of the charter provides:

". . . The city of Modesto shall have the right and power:

. . . . . . . . . .

"(46) To license for purposes of regulation and revenue all and every kind of business not prohibited by law to be transacted or carried on in the city, and all shows, exhibitions and lawful games carried on therein; to fix the rates of licenses upon the same, and to provide for collection thereof by suit or otherwise."

Pursuant to that authority, the ordinances in question were duly enacted. Article XI, section 8(j) of the Constitution authorizes a provision in a charter to empower a city to "make and enforce all laws and regulations *in respect to municipal affairs.*" (Italics added.)

The previously quoted provision of the Modesto charter appears to be a specific grant of power to license businesses within the city for the purpose of revenue. But the later decisions of our courts hold that it is immaterial whether the charter is construed to be an affirmative grant of power in that respect provided it does not contain a definite limitation in that regard.

It is said in *West Coast Advertising Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138], at page 524:

"No doubt is entertained upon the proposition that the levy of taxes by a municipality for revenue purposes, including license taxes, is strictly a municipal affair. (*Ex parte Braun,* 141 Cal. 204 [74 P. 780]; *Ex parte Helm, supra* [143 Cal. 553, 77 P. 453]; *Ex parte Lemon,* 143 Cal. 558 [77 P. 455, 65 L.R.A. 946]; *Ex parte Jackson,* 143 Cal. 564 [77 P. 457]; *Trebilcox* v. *City of Sacramento,* 91 Cal.App. 257, 265 [266 P. 1015].)"

Contrary to the contention of the appellant, the California authorities uniformly hold that the provisions of a duly enacted city charter authorizing the city to levy and collect license taxes for conducting businesses within the city, for the purpose of revenue, since the adoption of the amendment to the Constitution in 1896, become and are

"municipal affairs," and are therefore valid. (*Ex parte Braun*, 141 Cal. 204 [74 P. 780] ; *In re Galusha*, 184 Cal. 697 [195 P. 406] ; *In re Nowak*, 184 Cal. 701 [195 P. 402] ; *Ex parte Helm*, 143 Cal. 553, 557 [77 P. 453] ; *Trebilcox* v. *City of Sacramento*, 91 Cal.App. 257 [266 P. 1015] ; *In re Prentice*, 24 Cal.App. 345 [141 P. 220] ; *City of San Mateo* v. *Mullin*, 59 Cal.App.2d 652 [139 P.2d 351] ; *American Locker Co.* v. *City of Long Beach*, 75 Cal.App.2d 280 [170 P.2d 1005].)

In the Braun case, *supra*, the petitioner sought by means of habeas corpus to secure his release from custody after having been arrested for violation of an ordinance adopted by the city of Los Angeles pursuant to the provisions of its charter, rendering unlawful the conducting of a wholesale liquor business within the city without first procuring and paying for a prescribed license therefor. The ordinance was upheld as a valid exercise of municipal affairs, and the prisoner was remanded. The court said:

". . . it is very clear that the license-tax upon the business alleged to be conducted by petitioner was imposed solely for the purpose of raising revenue. . . .

"It is admitted that under the provisions of section 6 of article XI of the constitution, as amended in 1896, *all* cities and towns and charters thereof framed or adopted by authority of the constitution, are subject to and controlled by general laws, '*except in municipal affairs.*' But it is contended that the collection of a license-tax for revenue is, under the provisions of the Los Angeles charter, a 'municipal affair,' and that, therefore, the charter provisions are paramount. This question presents the real question in the case. Admittedly, the provisions of a charter framed under and in accordance with the provisions of section 8 of article XI of the constitution, and approved by the legislature as therein provided, are, by virtue of the amendment of 1896 to section 6 of article XI of the constitution, so far as 'municipal affairs' are concerned, supreme and beyond the reach of legislative enactment. . . .

". . . That the power of taxation is a power appropriate for a municipality to possess is too obvious to merit discussion. As was said by Mr. Justice Field in *United States* v. *New Orleans*, 98 U.S. 381 [25 L.Ed. 225], 'A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose.' . . .

". . . In the absence of constitutional provisions relating to the subject, the legislative department would necessarily have unlimited sway, and could, for the state, confer, modify, or withdraw the power and prescribe such regulations as it saw fit for its exercise. The state constitution is, however, the highest expression of the will of the people of the state, and so far as it speaks, represents the state. So, where, as here, a power is given in the constitutional method by special charter, and not by direct legislative enactment, it can be withdrawn only by amendment to the charter in the manner provided by the constitution. . . .

"The power of cities operating under freeholders' charters to raise money by taxation for municipal purposes does not find its source in any grant by the legislature. There is no enactment of the legislature purporting to vest such authority in such cities. Such power has been directly granted by the people of the state by the provisions of the state constitution. . . . Those provisions when legally incorporated in the charter constituted a grant from the state of the power to impose a license-tax for revenue purposes. This power, being so granted by the state to the municipality for municipal purposes, became a 'municipal affair' of the city of Los Angeles within the meaning of those words as used in the constitution, and the legislature was without authority to withdraw or modify such power. . . .

"Our conclusions are, therefore, that the power to collect a license-tax for revenue purposes was actually conferred upon the city of Los Angeles for municipal purposes by the charter framed for its government, . . . and cannot be withdrawn or abrogated by the legislature."

Section 4, subdivision 46, of the Modesto charter contains an express grant of power to levy and collect license taxes within the city on shows, exhibitions, lawful games, and on all and every kind of business not prohibited by law. Prior to the amendment of article XI, section 6, of the Constitution in 1914, that section provided that "All charters . . ., *except in municipal affairs,* shall be subject to and controlled by general laws." (Treadwell's Const. (6th ed.), p. 536.) By amendment of said section of the Constitution in 1914, all previously chartered cities were specifically authorized to "amend their charters . . . so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs." (Treadwell's Const. (6th ed.), p. 536.) We assume

that the city of Modesto was not required to amend its charter to validate the express provision which it already contained, authorizing it to license the conducting of businesses within the city. That provision was not contrary to the Constitution as it then existed. On the contrary, the Constitution then provided that chartered cities were subject to the general laws ''except in municipal affairs.'' The clear implication of that provision is that chartered cities were not subject to general laws *in municipal affairs*. In *West Coast Advertising Co.* v. *San Francisco, supra,* involving the validity of a license tax on the business of outdoor advertising in that city, under an ordinance adopted pursuant to an amendment of the charter after 1914, the trial court held that the license tax was illegal and invalid. On appeal the Supreme Court reversed that judgment. The respondent contended that since the charter did not specifically authorize the city to license businesses therein, and that ''a charter is a grant of power, the right to levy such taxes may not be implied,'' and the ordinance was therefore illegal and void. The court said in that regard:

''It is now established by a line of decisions of the courts of this state that a city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs unaffected by general laws on the same subject matters, and that it has such control whether or not its charter specifically provides for the particular power sought to be exercised within the limitations or restrictions placed in the charter. . . . [Citing authorities.] As stated in *In re Galusha,* 184 Cal. 697, at page 700 [195 P. 406]. 'The question, then, is not whether the charter grants the power to impose the tax, but whether it prohibits the tax, . . .' Also in *In re Nowak,* 184 Cal. 701, 704 [195 P. 402], it was said: 'The net result . . . is that, as to municipal affairs, the charter, instead of being a grant of power, is, in effect, a limitation of powers, and, the imposition of the tax for revenue purposes being strictly a municipal affair, *the city has the power to impose that tax unless the power was taken from it by the charter itself.* [Citing cases.]' '' (Italics added.)

We assume the previously quoted language that ''a city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs,'' does not mean that when a previously adopted charter specifically confers power to levy license taxes on businesses in

that city, or when that charter contains no limitations in that regard, it is necessary to preserve such rights by an amendment of the charter after the adoption of the amendment to the Constitution in 1914, or such power will be deemed to have been revoked by the amendment to the Constitution. The new charter of San Francisco, which was involved in that case, was adopted in 1931. (Stats. 1931, p. 2973.)

Since the charter of the city of Modesto, which was adopted in 1911, contained a specific authorization or grant of power to license shows, exhibitions, lawful games and businesses within the city, that power, as the Braun case said, could not be abrogated or revoked by subsequent legislation. Moreover, even though the Modesto charter did not specifically grant that power, if it contained no restrictions or limitations in that regard, it would still constitute a valid authorization to enforce its duly adopted ordinances in that respect. In *The City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168], at page 549, construing the effect of the amendments to sections 6 and 8 of article XI of the Constitution, the court said:

". . . In other words, under sections 6 and 8 of article XI of the State Constitution, city charters are no longer grants of municipal power but are merely restrictions and limitations upon such powers. If no restrictions or limitations are found in the charter the power of the city in 'municipal affairs' is full and complete, . . . ."

That is exactly what the court said in *In re Nowak,* 184 Cal. 701 [195 P. 402].

It will be observed that the court in the city of Oakland case does not criticise the Braun case or state that a charter adopted prior to the 1914 amendment to article XI of the Constitution was not a grant of power. All that it says, in commenting upon the effect of those amendments, is that "under sections 6 and 8 of article XI of the State Constitution [as it now exists], city charters are no longer grants of municipal power but are merely restrictions and limitations upon such powers." We assume that language was addressed to the 1914 amendment to section 8, which now provides in subdivision (j) thereof that:

". . . It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, *subject only to the restrictions and limitations provided in their several*

*charters* and in respect to other matters they shall be subject to general laws.'' (Italics added.)

By the foregoing subdivision it seems clear that a city is authorized to provide in its charter that it ''may make and enforce all laws and regulations in respect to municipal affairs,'' and that such laws and regulations will become valid and controlling within the city, except to the extent to which express restrictions or limitations thereto may be specifically provided for in the charter.

It seems immaterial whether we call that authority a grant of power, a conferring of power subject to specified restrictions and limitations, or a limitation of power. In any event it is a legislative recognition and approval of powers conferred upon a city to enact and enforce laws in municipal affairs within the scope of sections 6 to 8 of article XI of the Constitution.

The appellant cites section 16000 of the Business and Professions Code, which was adopted in 1941, in support of its contention that the legislature now has exclusive power to legislate with respect to the licensing of businesses for the purpose of revenue throughout the state. That section provides in part:

''The legislative bodies of incorporated cities may, in the exercise of their police power, and for the purpose of regulation, as herein provided, *and not otherwise,* license any kind of business not prohibited by law . . .'' (Italics added.)

That section has no application to a city whose previously adopted charter specifically authorized it to levy and collect license taxes for the purpose of revenue upon shows, exhibitions, lawful games or business enterprises therein, as the charter of Modesto specifically does. (*American Locker Co.* v. *City of Long Beach,* 75 Cal.App.2d 280, 285 [170 P.2d 1005] ; Bus. & Prof. Code, § 16003.) The last-cited section provides that:

''This article [chapter] does not repeal any act vesting municipal corporations with power to license for revenue purposes.''

We therefore conclude that the city of Modesto was fully authorized by its charter to adopt and enforce ordinance number 772, New Series, for revenue purposes, requiring plaintiff to pay the license taxes provided therein for operating its theaters in said city, and that that procedure was strictly a

municipal affair. The ordinance is not unconstitutional or void for either of said assigned reasons.

The complaint and amendments thereto fail to allege facts sufficient to show that either ordinance is unconstitutional or void on the asserted grounds that ordinance number 772 is "arbitrary, capricious and confiscatory" or that it is discriminatory because it "imposed upon said plaintiff a greatly excessive share of the burden of taxation." No facts are alleged in support of those statements. They are mere conclusions of law. Nor does the last paragraph of the amendments to the complaint allege any facts in support of the conclusion therein stated that "the additional business license tax imposed by said Ordinance 772 N. S. . . . . constitutes a double tax."

Ordinance number 487 is inadequately pleaded. Neither the substance of its provisions nor the title or date of its passage are alleged in the pleading. The general and special demurrer which was sustained after the complaint had been amended urged each of said defects as inadequate. It has been held that the mere reference to the number of an ordinance in a pleading, as plaintiff alleged in the present complaint, without stating the substance of its provisions or the title or date of its passage, is inadequate. (*City of Tulare* v. *Hevren,* 126 Cal. 226, 229 [58 P. 530] ; 18 Cal.Jur. § 211, p. 922; Code Civ. Proc., § 459.) The demurrer was properly sustained. In the absence of allegations of the provisions of municipal ordinance 487, or facts requiring the court to take judicial notice of the ordinance, we may assume its provisions differ, with respect to the purpose for levying license taxes, from the provisions of the subsequent ordinance number 772. Indeed, the respondents assert that ordinance number 487 merely applies to a franchise tax imposed on businesses in general *for regulatory purposes,* and not to revenue taxes on shows, exhibitions, games and places of amusement, as ordinance number 772 specifically does. Appellant appears to concede that fact. At page 15 of its closing brief plaintiff states that "For many years the City of Modesto, under an ordinance called 487 N. S., has imposed a license tax, *said to be for purposes of regulation,* upon all businesses within the City." Moreover the complaint fails to allege that plaintiff paid any taxes under ordinance number 487.

It is apparent the complaint was drawn by plaintiff on the erroneous theory that the city of Modesto was not authorized

to impose a license tax on businesses for revenue purposes and that such powers are exclusively within the province of the state. That was the only issue discussed by the appellant in its opening brief. It was not until the oral argument in this court and the filing, by leave of court, of its supplemental final brief and that of amici curiae, that the issue of the invalidity of ordinance number 772 was urged on the grounds that it is discriminatory and a double taxation.

There is no foundation in the pleading in this case upon which the court could determine that ordinance number 772 is discriminatory, unconstitutional or constitutes a double taxation because the former ordinance number 487 may have covered the same purpose of raising revenue, since the contents of ordinance 487 are not properly pleaded, and it is not referred to by either title or the date of its passage. (*People* v. *Burkhart,* 5 Cal. 2d 641, 643 [55 P. 2d 846].) In the case last cited the appellant was charged and convicted of violation of section 112 of the Vehicle Act [now Veh. Code]. He pleaded not guilty and also that he had been formerly convicted in a justice's court of the same offense under "County Ordinance No. 1735." It was stipulated the appellant was formerly convicted under that ordinance. On appeal, the Supreme Court said:

"It will be observed that the stipulation covers the charge made in the justice's court and the defendant's plea of guilty, *but does not attempt to give the contents of the ordinance. Therefore there is no legal basis for a determination by this court that the offense denounced by the ordinance is included in the offense of violation of section 112 of the California Vehicle Act.*" (Italics added.)

The allegations of the complaint in this case are inadequate. The mere statements that the taxes imposed by ordinance number 772 are discriminatory, a double taxation, arbitrary, capricious or confiscatory, are merely conclusions of law. They do not constitute allegations of ultimate facts. Such conclusions are not admitted as facts by the filing of the demurrer. (*Meyer* v. *Board of Public Works,* 51 Cal.App.2d 456, 470 [125 P.2d 50].) In *Pacific Railways Advertising Co.* v. *Conrad,* 168 Cal. 91 [141 P. 916], the Supreme Court said: "It is only when such an ordinance is clearly unjustly oppressive and discriminatory that the power of a court may be invoked to right the wrong." Such allegations must be

adequately pleaded to constitute a good cause of action on those grounds.

Since ordinance number 487 was not before the court, and the plaintiff's amendments to its complaint in that respect failed to allege otherwise, we may assume it was adopted as a proper exercise of the police powers of the city to regulate businesses therein as distinguished from the purpose of raising revenue, and that it does not cover theaters and places of amusement.

The appellant argues in support of its contention that ordinance number 772 is discriminatory and constitutes a double taxation for revenue purposes because it is subject to taxes under both ordinances, and theaters and places of amusement would therefore bear grossly excessive taxes over those imposed upon other ordinary businesses. But the complaint fails to allege what other businesses are subject to license taxes under ordinance 487, what rate or amount of taxes are imposed thereby, or that plaintiff paid any such taxes. There can be no doubt that the city is authorized to lawfully classify all theaters, shows, exhibitions and games for the purpose of taxation separate and distinct from other ordinary businesses of a different character. Ordinance number 772 requires the payment of a three-cent tax on each ticket, of admission to certain specified entertainments. The burden of taxes is dependent upon the bulk of business or patronage enjoyed. Certainly that is a legitimate classification. The complaint fails to allege facts from which we may determine what burden of taxes is borne by other business enterprises.

The mere fact that a business enterprise may be required to pay regulatory taxes under the police power of a city, under one ordinance, and to also pay additional property taxes for the purpose of revenue under another ordinance does not render the ordinances illegal or void on the ground of double taxation. Article XIII of the California Constitution has no application to excise taxes. It applies only to property taxes. (*Ingels* v. *Riley*, 5 Cal. 2d 154 [53 P. 2d 939, 103 A.L.R. 1].) In the case last cited it is said at page 164 that:

"It is also urged that the act is unconstitutional for the reason that . . . double taxation is imposed by the same taxing agency on the same privilege. . . . There is no merit in this contention. . . . Article XIII, section 1, of the state Constitution, has no application, because that section applies only to property taxes."

In *In re Guerrero,* 69 Cal. 88 [10 P. 261], it is said at page 91:

"... Imposing licenses for regulating business, etc., is an exercise of the police power, while imposing them for revenue purposes is an exercise of the taxing power. (2 Dillon's Mun. Corp., sec. 768.) ... under the provisions of the constitution which we have quoted, *there is no doubt of the power of municipalities to impose licenses for the purpose of regulation, or revenue, or for both regulation and revenue;* and for those purposes the power of the municipality of Los Angeles has been sustained in *City of Los Angeles* v. *S.P.R.R. Co.,* 61 Cal. 60." (Italics added.)

In *In re Higgins,* 50 Cal.App. 533 [195 P. 740], it is said at page 536:

"... Under these provisions the power exists both to levy license taxes for revenue and to collect license fees under the general police power. *Where both powers exist in relation to a specific business it is a matter of indifference whether the particular enactment is under one or the other or both of the powers.* (*Gundling* v. *Chicago,* 177 U.S. 183-188 [44 L.Ed. 725, 20 S.Ct. 633, see, also, Rose's U.S. Notes.].)" (Italics added.)

It is true that double taxation upon the value of property, as distinguished from excise taxes imposed for the privilege of conducting a business enterprise, is prohibited. (Const., art. XIII, § 1; *Flynn* v. *San Francisco,* 18 Cal.2d 210, 215 [115 P.2d 3]; *The Napa Savings Bank* v. *County of Napa,* 17 Cal.App. 545 [120 P. 449]; Rev. & Tax. Code, § 102, formerly Pol. Code, § 3607.) A clear distinction is, however, made with respect to that prohibition between property taxes based upon the value or income from property and mere excise license taxes imposed for the privilege of conducting a business enterprise. (*Brunton* v. *Superior Court,* 20 Cal.2d 202, 206 [124 P.2d 831]; *City of Los Angeles* v. *Los Angeles Ind. Gas Co.,* 152 Cal. 765 [93 P. 1006].) In the Brunton case, *supra,* the trial court held that certain ordinances adopted by the city of Los Angeles to prohibit the drilling for oil without first procuring a license therefor, were enacted "for revenue as well as regulation" and therefore unreasonable, discriminatory and invalid. On appeal the determination of the trial court in that regard was reversed. The Supreme Court said:

"Respondents contend that the statement in the foregoing findings that the fees were imposed by the city 'for revenue

920

as well as regulation' indicates the court was of the opinion that under article XIII, section 1 of the California Constitution no fees for revenue purposes can be imposed by one political subdivision upon another. . . . If the fee required by the ordinances under consideration is a tax, however, *it is not a tax upon the value of the property* owned by the Flood Control District *but a tax upon the privilege of drilling for oil. It is settled that a privilege tax is not a property tax within the meaning of this and other sections of the Constitution.* [Citing numerous authorities.]'' (Italics added.)

 Cumulative taxes are not necessarily unconstitutional on the ground of double taxation even though they may be imposed on the same property for the same period of time. (*Klemm* v. *Davenport,* 100 Fla. 627 [129 So. 904, 70 A.L.R. 156]; 51 Am.Jur., § 284, p. 336.) In the case last cited it is said that ''If one is a tax [for revenue on the ownership of the property] and the other a license fee or special assessment, double taxation is not accomplished.'' And in the text of 51 American Jurisprudence, at page 337, supported by numerous authorities, it is said that ''before invalid double taxation may be said to exist, both taxes must have been imposed in the same year, *for the same purpose,* upon property owned by the same person, and by the same taxing authority.'' The foregoing conditions do not appear in the present case. The complaint in this case fails to allege facts showing that the ''cumulative taxes'' or so-called ''double taxes'' were imposed for the same purpose of revenue.

 Since the allegations of the complaint in this action fail to show the provisions contained in ordinance number 487, or that ordinance number 772 constitutes a double taxation on the same property, or how it discriminates unlawfully against plaintiff, we must conclude that it does not provide for a double taxation, that it is not an illegal classification of businesses, and that it is not discriminatory or void, but is a valid exercise of the powers conferred upon the city of Modesto by its charter to levy taxes upon shows, theaters and places of entertainment for revenue purposes.

The case of *Knapp* v. *City of San Bernardino,* recently decided by the Superior Court of San Bernardino County, upon which the appellant chiefly relies in support of its contention that the taxes imposed by ordinance number 772 are discriminatory and constitute illegal double taxation which places an undue and unreasonable burden on plaintiff's moving picture theaters, does not apply to the situation presented

in this action. That elaborate opinion of the trial court is printed as appendix "A" attached to the brief of amici curiae filed by consent of this court after the oral arguments had been presented. That case was decided after trial upon detailed oral and documentary evidence adduced, showing conclusively that ordinance number 1714 and ordinance number 763 of the city of San Bernardino, both of which were received in evidence, were in full force in 1944, being the period of time involved in that case, and that both ordinances clearly provided that they were enacted *for the purpose of revenue* as distinguished from mere regulation of business enterprises under the city's police power. The inadequacy of the allegations of the complaint in that case was not involved. The sufficiency of the allegations of the complaint in that case was not disputed. That opinion states:

"Reference has already been made to the allegation of the complaint, the truth of which is not disputed, that the ordinance under attack, numbered 1714, *states on its face* that it is not a regulatory measure but one designed solely for raising revenue."

The opinion states that the first ordinance, number 763, imposed license taxes on numerous classes of business "including the business of conducting, carrying on or managing theatres," and that the subsequent ordinance number 1714 was adopted and imposed a similar tax "upon the conduct by plaintiff Knapp of his moving picture theatre under it" for a portion of the same time included in the former ordinance. Both ordinances prescribed a graduated quarterly license tax upon the same moving picture enterprises, and other business enterprises, based upon the gross receipts therefrom. The court said: "Discussion of the case will, therefore, be directed *exclusively* to the question whether the ordinance attacked, including any discriminations that it involves, *transcends the limitations upon the exercise for purposes of revenue* as distinguished from regulation, of the taxing power of the City." A certified public accountant and numerous witnesses testified in great detail to the gross receipts of 20 different classes of business enterprises, as compared with the gross receipts and taxes paid by plaintiff on his moving picture business. From the vast amount of statistics disclosed by that record the court determined that in comparing the gross receipts of the plaintiff's theater business with those of other business enterprises, it appeared that the taxes imposed

by the ordinance of the city of San Bernardino on plaintiff's theater business "is so palpably unreasonable that it can manifestly not be sustained," and that said taxes are therefore illegal and void. The court thereupon rendered judgment for the plaintiff in the sum of $274.05, being the amount determined to have been illegally collected by the city for the year 1944, during which period both ordinances were in force. In effect, the Knapp case decides, after trial, that the taxes imposed were grossly unreasonable, discriminatory and founded on double taxation of the same property for the same year and levied *for the same purpose* of revenue as distinguished from regulation of businesses for police purpose.

Assuming that the Knapp case was properly decided on the evidence which was adduced therein, it is nevertheless not authority determinative of the issues on this appeal. In the present action, which was decided on the pleadings alone, we must assume, on account of a lack of adequate allegations to the contrary, that the license tax imposed by ordinance 772 was not a double tax, in the legal sense of that term, and that it was neither unreasonable nor discriminatory.

We are convinced the other cases relied upon by the appellant may be likewise distinguished.

In this case the plaintiff had an opportunity to amend its complaint, and we assume that it did so amend the pleading to state the issues as favorably to plaintiff as the facts warrant. In neither of its briefs does appellant contend that the court abused its discretion in sustaining the demurrer to the complaint as amended without leave to again amend the complaint. It is true that it is stated on page 28 of its closing brief that, "The Court might very properly have *ordered* this appellant to plead further or more particularized facts concerning the oppressive nature of the tax burden thus thrust upon it." But the appellant still relies upon the sufficiency of the facts as alleged in its amended and supplemental complaint, to which it was stipulated the demurrer would be deemed to apply. It is not stated in that brief that the court abused its discretion in sustaining the demurrer *without leave to amend.* That principle is not discussed in the briefs. For the reason that the complaint, as amended, fails to adequately show a double taxation, or that the taxes imposed were unreasonable, discriminatory or unduly burdensome, the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.