[No. AO16132. First Dist., Div. Three. Nov. 21, 1983.]

O.N.C. FREIGHT SYSTEMS et al., Plaintiffs and Appellants, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

12

14

**COUNSEL**

Stephen L. Porter and Burns & Whitehead for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Eleanor Nisperos, Deputy Attorney General, for Defendant and Respondent.

OPINION

**WHITE, P. J.**—Plaintiffs and appellants O.N.C. Freight Systems and McLean Trucking Company filed a complaint for declaratory relief in the Superior Court of San Francisco County naming respondent herein, the Department of Motor Vehicles, as defendant. The matter was submitted to the trial court on stipulations of fact and law. The trial court found in favor of the Department of Motor Vehicles on all issues raised by the complaint and judgment was entered in favor of the Department of Motor Vehicles. Appellants filed a timely notice of appeal from the judgment.

O.N.C. Freight Systems (hereinafter ONC) is a California corporation engaged in the commercial trucking business. Sometime before December 31, 1978, ONC filed an application with the Department of Motor Vehicles (hereinafter DMV) to prorate register certain of its fleet vehicles for the 1979 calendar year. Based upon said application, DMV issued ONC prorate registration for the 1979 calendar year and ONC paid the assessed fees.

McLean Trucking Company (hereinafter McLean) is a North Carolina corporation that is engaged in commercial trucking in interstate commerce. Following approval of a temporary transfer of operating authority by the Interstate Commerce Commission and pursuant to an agreement effective May 1, 1979, ONC leased the fleet vehicles to McLean to operate pending consummation of a purchase agreement.

Following commencement of the lease on May 1, 1979, the DMV required McLean to reregister the vehicles leased from ONC and to pay a second set of registration fees for the leased vehicles. The fees were assessed even though McLean stated that it intended to operate the fleet vehicles for the period of May 1, 1979, through December 31, 1979, over the same routes upon which ONC had intended to operate during that period. The prorate registration fees that DMV assessed against McLean were the portion of the annual prorate registration fees attributable to the period from May 1, 1979, through December 31, 1979. McLean paid under protest the sum of $108,134. McLean and ONC then brought the instant action seeking a declaration that they were entitled to a refund of the $108,134 under the theory that both McLean and ONC paid the prorate registration fees on the same vehicle for the period of May 1, 1979, through December 31, 1979.

Every owner of a vehicle must register the vehicle and registration is renewed annually. (Veh. Code, § 4601.)[1] The registration of a commercial

---

[1]All statutory references are to the Vehicle Code unless otherwise noted.

vehicle triggers the payment of three separate annual fees: the registration fee, the commercial weight fee and the license fee. (§§ 9250, 9400; Rev. & Tax. Code, §§ 10851, 10751, 10752.) The Vehicle Code permits the operator of three or more commercial vehicles that are involved in interstate commerce to prorate registration fees on the basis of miles traveled in the state as compared to the total miles traveled in other states in the preceding year. (§§ 8151, 8153.) Prorate registration has been implemented through a multistate compact known as the Uniform Vehicle Registration Proration and Reciprocity Agreement (hereinafter Agreement). California entered into this Agreement with a number of other states. (§ 8002; *Santa Fe Trail Transportation Co.* v. *Department of Motor Vehicles* (1967) 254 Cal.App.2d 842, 843 [62 Cal.Rptr. 672].) Before prorate registration came into effect, one state would receive the registration fees under reciprocity statutes and agreements although the commercial vehicles traveled in a number of states. The purpose of the Agreement was to compensate each state in which commercial vehicles travel for the use of its highways by out of state vehicles.

Section 53 of the Agreement provides: "If a commercial vehicle is operated by a person other than the owner as a part of a fleet which is subject to the provisions of this article, then the operator of such fleet shall be deemed to be the owner of said vehicle for the purposes of this article." The DMV has construed this section to mean that both the owner and the lessee can be required to register and to pay registration fees in the same year. Appellants argue that this interpretation of section 53 is repugnant to the purpose of the Agreement. Appellants also argue that this interpretation denies them equal protection of the law. They point to the fact that when a vehicle is transferred which is not subject to prorate registration, no new registration fee is paid by the new owner and the only fee that is paid is a $7 transfer fee. (§ 9255; Rev. & Tax. Code, § 10757.) Appellants assert that there is no rational basis for treating a transfer of a vehicle that is subject to prorate registration differently from a transfer of a vehicle that is subject to the general provisions for registration. Appellants further contend that the DMV's interpretation of section 53 can impose "double payment of annual registration fees" and is illegal because it discriminates against interstate commerce.

Appellants imply that the "double registration" of the leased vehicles has resulted in "double taxation." ■ "Cumulative taxes are not necessarily unconstitutional on the ground of double taxation even though they may be imposed on the same property for the same period of time." (*Redwood Theatres* v. *City of Modesto* (1948) 86 Cal.App.2d 907, 920 [196 P.2d 119].) ■ Before invalid double taxation may be said to exist, both taxes

must have been imposed for the same time period, for the same purpose, upon the same property and same person. (*Pesola* v. *City of Los Angeles* (1975) 54 Cal.App.3d 479, 486 [126 Cal.Rptr. 580]; *Redwood Theatres* v. *City of Modesto, supra,* 86 Cal.App.2d at p. 920.) The registration fees in the instant case were imposed on the same property and for the same period of time, but they were not imposed on the same person. In fact the registration fees were imposed upon McLean because a change of ownership took place under section 53 of the Agreement. Accordingly, requiring McLean to register the vehicles at the commencement of the lease and pay the prorate registration fees did not amount to double taxation.

Appellants contend that there is no statutory authorization for a second registration of commercial vehicles that have been registered for one year when said vehicles are leased during the period in which the original registration is in effect. To support their contention appellants point to Vehicle Code sections that concern regular registration. However, the alternative method of prorate registration is governed exclusively by Vehicle Code sections 8150-8163 and the Uniform Vehicle Registration and Proration and Reciprocity Agreement. As noted earlier under section 53 of the Agreement a lessee of commercial vehicles involved in interstate commerce is deemed the owner of the vehicles. Section 57 of the Agreement provides: "If any vehicle is added to a prorated fleet after the filing of the original application, the owner shall file a supplemental application in accordance with the instructions. The owner shall register such vehicle in each contracting State in like manner as provided for vehicles listed in an original application and the registration fee payable shall be determined on the mileage proportion used to determine the registration fees payable for vehicles registered under the original application." Vehicle code section 8158 provides: "The provisions of this article shall apply to vehicles added to a fleet and operated in this State during the license year." Section 58 of the Agreement provides: "If any vehicle is withdrawn from a prorated fleet during the period for which it is registered or identified, the owner shall notify the administrator of each State in which it is registered or identified of such withdrawal and shall return the plates, and registration card or identification as may be required by each administrator."

The DMV submits that when ONC leased the vehicles to McLean, the vehicles were withdrawn from ONC's fleet at which time they lost their registered status under section 58 of the Agreement. The DMV points out that there is no provision in the Agreement for a refund for "unused mileage" when vehicles are withdrawn from a fleet. The DMV reasons that when McLean leased the vehicles from ONC, the vehicles were additions to McLean's fleet under the terms of section 57 of the Agreement, and

McLean was required to register the vehicles and to pay the prorate registration fees.

We agree with the DMV that Vehicle Code section 8158 and sections 57 and 58 of the Agreement gave the DMV the authorization to require McLean to register the vehicles upon the effective date of the lease and to pay some prorate registration fees for the vehicles. ■ The DMV may treat commercial vehicles differently from noncommercial vehicles. ■ "In seeking to impose a tax upon motor vehicles transported upon our highways *for gain* the Legislature is possessed of the constitutional power to place all such vehicles in one class and to place all vehicles not operated for gain in another class and to impose a greater tax upon the former than the latter. [Citations.] It is not necessary for the Legislature, to achieve such a classification, to find that there is a difference in the wear, tear and upkeep of the highways or in the hazards involved. These are proper but not requisite factors for the Legislature to take into consideration and to appraise, if it sees fit to subdivide the class or create proper exceptions to it." (*Lord v. Henderson* (1951) 105 Cal.App.2d 426, 431-432 [234 P.2d 197].)

Requiring commercial vehicles involved in interstate commerce to register at the time they are leased can be justified by the fact that a lessee of commercial vehicles in interstate commerce may be subject to a different formula for the determination of prorate registration fees than the lessor. The formula for determining prorate registration fees is based upon total mileage ("or equivalent when required by the department") traveled in the preceding year in proportion to the miles traveled in California in the preceding year ("or equivalent when required"). (§ 8153.) We do not feel the DMV's policy of imposing the full registration fees upon a lessee when he leases commercial vehicles when there is a period remaining until the annual registration date, is repugnant to the purpose of the Agreement. As noted earlier the purpose of the Agreement is to try to compensate a state for the use of its highways by commercial vehicles. The formula for determining the lessee's registration fees would in most cases be different than the formula used to determine the lessor's registration fees, since the formula is based upon mileage of the owner of the commercial vehicles. Not to impose registration fees upon the lessee could cause the state to be inadequately compensated for the use of its highways since the lessee may travel in state more than the lessor had.

■ The fact that McLean's projected method of operation may have been the same as ONC's mileage history is irrelevant and can have no bearing upon the statutory and constitutional power of the State of California to levy a tax upon such a second operator's privilege to itself operate ve-

hicles in California, for the validity of a tax statute cannot rest solely upon its effect upon a given taxpayer. (See *Massachusetts* v. *United States* (1978) 435 U.S. 444, 463-464 [55 L.Ed.2d 403, 417-418, 98 S.Ct. 1153]; *Hughes* v. *Alexandria Scrap Corp.* (1976) 426 U.S. 794, 812-813 [49 L.Ed.2d 220, 232-233, 96 S.Ct. 2488].)

Having simply exercised its business judgment to lease its commercial vehicles to McLean, ONC has no cause to complain. ■ One who pays for a privilege or right to do something is not wronged by his own refusal to enjoy it as freely as he may. (*Lord* v. *Henderson, supra,* 105 Cal.App.2d 426, 441; see also *Aero Transit Co.* v. *Comm'rs* (1947) 332 U.S. 495, 506, fn. 19 [92 L.Ed. 99, 108, 68 S.Ct. 167].) As the DMV so aptly states "the case at bar poses neither in law nor in fact a 'duplicate" assessment dilemma in any way, shape or manner: *One* assessment was levied upon *each* of *two* separate operators for the discrete privilege granted to each; *neither* of those operators has been assessed more than once. Each operator has paid no more than the appropriate tax for the privilege each was granted, and neither has cause to complain."

■ We now turn to appellants' contention that collection of registration fees denied appellants equal protection of the laws. Appellants' position is premised on the fact that when a vehicle is transferred which is not subject to prorate registration, no new registration fee is paid by the new owner. Appellants assert there is no rational basis for treating a transfer of a vehicle that is subject to prorate registration differently from a transfer for a vehicle that is subject to the general provisions for registration. We have already quoted from *Lord* v. *Henderson, supra,* 105 Cal.App.2d 426, 431-432, for the proposition that the Legislature may treat and classify commercial vehicles in a different manner than private vehicles.

■ The equal protection clause of the Fourteenth Amendment requires that persons similarly situated receive equal treatment. "The 'equal protection' clause requires that persons under like circumstances be given equal protection and security in the enjoyment of personal and civil rights, the acquisition and enjoyment of property, the enforcement of contracts and the prevention and redress of wrongs; and that they be subject to similar taxes and penalties." (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 336, p. 3630.) ■ "The general principles applicable to the determination of an equal protection challenge to state tax legislation were recently summarized by the United States Supreme Court as follows: 'We have long held that "[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment

produce reasonable systems of taxation." [Citation.] A state tax law is not arbitrary although it "discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy," not in conflict with the Federal Constitution. [Citation.] This principle has weathered nearly a century of Supreme Court adjudication. . . .'" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 233-234 [149 Cal.Rptr. 239, 583 P.2d 1281].) The court in *Amador* went on to say: "Consistent with the foregoing expression of broad liberality, the high court has recognized the wide flexibility permitted states in the enforcement and interpretation of their tax laws, holding that 'The latitude of discretion is notably wide in the classification of property for purposes of taxation *and the granting of partial or total exemptions upon grounds of policy.*' [Citations.] There exists no 'iron rule of equality, prohibiting the flexibility and variety that are appropriate' to schemes of taxation. [Citations.] So long as a system of taxation is supported by a rational basis, and is not palpably arbitrary, it will be upheld despite the absence of "'a precise, scientific uniformity'" of taxation." (*Id.*, at p. 234.)

 The Legislature was authorized to distinguish between commercial vehicles in interstate commerce and other vehicles. "First, and foremost in considering the cases before us, it needs to be recalled that the state owns its highways and consequently may impose reasonable fees for their use by vehicles moving interstate or intrastate. It may classify the traffic, among other things, according to the character of the traffic, or the purpose for which the highways are used, as for instance whether it be for private gain or not. [Citations.] The tax imposed as to vehicles in one class need have no resemblance in character or amount with that of vehicles in another class, so long as the imposition itself is reasonable with respect to the class." (*Lord* v. *Henderson, supra,* 105 Cal.App.2d 426, 436.)

 The purpose of prorate method of registration is to assess an interstate carrier a privilege tax measured by its mode of operation. If McLean was not required to register and to pay the prorate registration fees for the time he was going to use the vehicles, he would escape paying for his use of the highway. We recognize that it could be said that ONC paid for McLean's use of the highway. But we must determine the validity of the DMV's policy not merely on a single person but we must determine the validity of the policy on its overall effect. If the DMV could not require a new owner of commercial vehicles to register them at the time of acquisition, the new owner may escape paying his fair share, if a different formula would be applicable to determine his prorate registration fees than was applicable to the previous owner. Under prorate registration each operator's

registration fees are based on the particular use he will make of the state's highway. If no new registration fees are assessed at the time of a transfer, the registration fees that have been paid will not reflect the use that the new operator will make of the state's highways. The fact that the DMV "might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional." (*Hughes* v. *Alexandria Scrap Corp.*, *supra*, 426 U.S. 794, 813 [49 L.Ed.2d 220, 233].) Accordingly, there is a rational basis for the DMV's policy and appellants have not been denied equal protection of the laws.

Finally, appellants contend that the policy of the DMV discriminates against interstate commerce in that the policy favors intrastate registrants over interstate registrants. Appellants state that the "DMV imposes a second set of registration fees upon lessees and buyers of registered vehicles who operate in interstate commerce, but intrastate purchasers and lessees are not assessed further registration fees in the same circumstances." Appellants point out that persons who operate private vehicles, who operate commercial vehicles intrastate, or who operate less than three commercial vehicles interstate, pay regular California registration fees and are exempt from further registration fees in other jurisdictions under the Agreement. However, a person who operates three or more commercial vehicles in interstate commerce is required to obtain prorate registration of his vehicles or pay regular registration fees in every state where the vehicles travel under the Agreement. Appellants concede that whether "a registrant pays regular registration fees or prorate registration fees in the first instance does not raise a constitutional issue. Once registered, however, California may not subject interstate business, who must prorate register, to discriminatory treatment in the later sale or lease of their registered vehicles." Appellants summarize their position as follows: "Appellants' contention . . . is that California may not levy a tax upon lessees and buyers of registered vehicles *solely* because they are engaged in interstate commerce."

"No State, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business'." (*Boston Stock Exchange* v. *State Tax Comm'n* (1977) 429 U.S. 318, 329 [50 L.Ed.2d 514, 524, 97 S.Ct. 599].) It is well established that a state may, without offense to the commerce clause, impose a tax upon carriers in interstate commerce to compensate the state for the use of intrastate facilities which such carriers enjoy. (*Colonial Pipeline Co.* v. *Traigle* (1975) 421 U.S. 100, 108 [44 L.Ed.2d 1, 8-9, 95 S.Ct. 1538].)

 We are of the opinion that the DMV's policy does not offend the commerce clause. The whole purpose of prorate registration is to have people who are operating three or more commercial vehicles in interstate commerce to pay for the use of the highways. Requiring operators of such vehicles to register when there has been a change of ownership and pay registration fees, furthers this policy otherwise the new operator would not pay for the use he or it is going to make of the state's highways. This is because prorate registration fees are based upon the use of the highway that each operator will make.

The judgment is affirmed.

Scott, J., and Feinberg, J., concurred.

A petition for a rehearing was denied December 21, 1983, and appellants' petition for a hearing by the Supreme Court was denied February 16, 1984.