[Civ. No. 15325. Second Dist., Div. Two. July 9, 1946.]

AMERICAN LOCKER COMPANY, INC. (a Corporation), Appellant, v. CITY OF LONG BEACH et al., Respondents.

Denio, Hart, Taubman & Simpson for Appellant.

Irving M. Smith, City Attorney, and AtLee S. Arnold, Deputy City Attorney, for Respondents.

McCOMB, J.—From a judgment in favor of defendants predicated upon the sustaining, without leave to amend, of their demurrer to the complaint in an action to enjoin the enforcement of an ordinance of defendant city requiring a license fee for the maintenance of coin operated lock boxes in stations or terminals of railroads or bus lines, located in the city of Long Beach, plaintiff appeals.

So far as material here it is alleged in the complaint as follows:

"That plaintiff is in the business of placing and maintaining in the stations or terminals of various railroad, interurban, and bus lines, and in open and public portions of said stations or terminals, a tier or tiers of coin operated metal lock boxes. That said boxes are so constructed that a person wishing to use the same may deposit a coin in a slot in an unoccupied box and then place belongings in said box and lock the same therein for temporary safe keeping. That the average

annual earnings of such boxes for a five year period have been $1.29 per box. That plaintiff is now operating a tier of eight of such boxes in the Central Bus Station at 56 American Avenue in the City of Long Beach. That defendants have demanded and are now demanding from plaintiff the payment of the sum of $10.00 as a license fee for revenue purposes only under the provisions of Section 3.355 of said License Code on said eight boxes so located in said Central Bus Station for the year 1945. That plaintiff also maintains similar coin operated boxes in other bus stations and terminals in the City of Long Beach, and said defendants have heretofore demanded and received from plaintiff for the year 1945 the sum of $10.00 as a license fee for revenue purposes only for each separate location of a group of said boxes in each such station or terminal.

"That plaintiff has refused to pay said sum of $10.00 demanded as aforesaid for said boxes at said Central Bus Station at 56 American Avenue.

"That heretofore and under date of September 14, 1943, the City Council of the City of Long Beach adopted and enacted Ordinance No. C-2232, known as the License Code, the title of which ordinance is as follows, to wit:

" 'An ordinance to establish a license code, thereby consolidating and revising the law relating to the licensing and regulating of certain businesses, professions and pursuits carried on within the City of Long Beach; providing fees therefor; imposing penalties for violations thereof; and repealing all ordinances and parts of ordinances in conflict herewith.'

"That Section 3.355 of the said License Code now provides as follows:

" 'Sec. 3.355. Locker Clubs. For every person conducting, managing or operating what is commonly known as a Locker Club in the City of Long Beach, or operating any place wherein space is rented to persons for the storage of clothing or other personal property, whether such charge be in the form of a regular charge or a membership fee to such club, the sum of Ten Dollars ($10.00) per year.'

"That Section 6.105 of said License Code provides as follows:

" 'A separate license shall be obtained for each branch, establishment or separate office or place for carrying on any business or pursuit specified in this Ordinance and the amount thereof, unless otherwise specified shall be equal to the amount specified for carrying on the original business.'

"That under date of January 30, 1945, Section 3.515 of said License Code was amended to read as follows, to wit:

" 'Ordinance No. C-2364

" 'Vocational. For every individual engaged in any business, occupation, profession or vocation in the City of Long Beach, not otherwise specified in this ordinance, and maintaining a fixed place of business in said City, the sum of Ten Dollars ($10.00) per year; provided, however, that this provision shall have no application to individuals whose entire earnings as a result of engaging in such business, occupation, profession or vocation are limited or confined to a salary or wage or commission paid by an employer, and provided that this section shall have no application to individuals engaged in the teaching of the cultural pursuits of music, both vocal and instrumental, drama, elocution and art.'

"That the charter of the City of Long Beach provides in Section 329 thereof as follows:

" 'Sec. 329. All general laws of the State of California applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, shall be applicable to the City of Long Beach.'

"That said City Charter of the City of Long Beach does not contain any provision authorizing or permitting the licensing of any business, occupation, or profession for revenue purposes only, and that the provisions of the General Laws of the State of California, in Section 16000 of the Business and Professions Code are therefore made applicable to the City of Long Beach by said section 329 of said City Charter. That said Section 16000 of said Business and Professions Code provides as follows:

" 'Authority to License. The legislative bodies of incorporated cities may, in the exercise of their police power, and for the purpose of regulation, as herein provided, and not otherwise, license any kind of business not prohibited by law transacted and carried on within the limits of their jurisdictions, including all shows, exhibitions and lawful games, and may fix the rates of such license fee and provide for its collection by suit or otherwise.' "

Plaintiff urges the following five reasons why in its opinion section 3.355 of the License Code of the city of Long Beach is invalid.

(1) *The charter of defendant city specifically prohib-*

*its the municipality from imposing a license tax for revenue purposes, but its power is limited to imposing a license tax for regulatory purposes only.*

This proposition is untenable. Section 33 of the charter of defendant city reads as follows:

"Sec. 33. To license and regulate places of amusement and the carrying on of any and all professions, trades, callings, occupations and kinds of business, carried on within the limits of said city; and to fix the amount of license tax thereon to be paid by all persons engaged in carrying on such places of amusement and such professions, trades or callings, occupations and kinds of business in said city, and to provide for the manner of enforcing the payment of such license tax; and to regulate, restrain, suppress and prohibit hawking, peddling and the carrying on of any laundry, livery and sale stable, cattle or horse corral, feed yard, horseclipping establishment, bill boards, lumber yards, planing mills, rolling mills, oil wells, furnaces, chimneys and smoke stacks, tanks or refineries, foundries, brickyards, slaughter houses or butcher shops, and the keeping of bees, cattle or other domestic animals, poultry or pigeons within the limits or within any designated portion of said city; and to prohibit and suppress the sale or giving away of intoxicating liquors; and the keeping of any place where alcoholic liquor or other intoxicating drinks are sold or given away, and all faro banks, games of chance, gambling houses, or bawdy houses, and any and all obnoxious, offensive, immoral, indecent or disreputable places or practices within the said city."

The law is settled in California that the words "license and regulate" as used in the foregoing section of the City Charter of Long Beach include the authority to impose a license tax for *revenue purposes only*. (*In re Galusha,* 184 Cal. 697, 700 [195 P. 406]; *In re Nowak,* 184 Cal. 701, 705 [195 P. 402].)

Section 329 of the City Charter of Long Beach reads thus:

"All general laws of the State of California applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, shall be applicable to the City of Long Beach."

Plaintiff argues that defendant city by the incorporation in its charter of section 329 has adopted the provisions of section 16000 of the Business and Professions Code (formerly section 3366 of the Political Code) which reads thus:

"Authority to License. The legislative bodies of incorpo-

rated cities may, in the exercise of their police power, and for the purpose of regulation, as herein provided, and not otherwise, license any kind of business not prohibited by law transacted and carried on within the limits of their jurisdictions, including all shows, exhibitions and lawful games, and may fix the rates of such license fee and provide for its collection by suit or otherwise.''

This argument is fallacious for the reason that the limitation in section 16000 of the Business and Professions Code is contrary to the power conferred by section 33 of the city charter. Section 329 of the city charter makes applicable to the defendant city only such laws of the State of California as are not in conflict with the provisions of the charter; since the section of the Business and Professions Code is in conflict with a provision in the city charter such section is not applicable to the defendant city and is not a limitation upon its powers. Hence, under the authority contained in section 33 of its charter the defendant municipality had the power to levy a license tax for revenue purposes only.

■ (2) *Section 3.355 of the Long Beach License Code is too indefinite and uncertain to be enforceable because in its classification of those subject to the license tax it attempts to impose the tax upon those operating what is "commonly known as a locker club in the city of Long Beach."*

This contention is likewise without merit. Plaintiff urges that the ordinance is invalid upon the authority of *Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 607 [76 P.2d 97], wherein an ordinance of the city of Los Angeles imposing a tax on ''any store . . . commonly known as a department store or any store where a variety of goods, wares, and merchandise are arranged . . . or offered for sale'' was held invalid because there was not in the ordinance any definition of a department store by which a party might know whether a particular business was included in the terms of the ordinance, since the term ''commonly known as a department store'' could not be applied with any degree of certainty to any particular business and was too indefinite to be used as a classification for the purpose of taxation. This case is not here in point. There is no contention that plaintiff is being licensed under the provisions of an ordinance referring to locker clubs. The license tax is being imposed upon plaintiff under the provisions of the ordinance providing for the licensing of a person ''operating any place wherein space is

rented to persons for the storage of clothing or other personal property.'' Clearly such a provision is definite and certain and is applicable to plaintiff since it admits that it is engaged in such a business.

(3) *Plaintiff is liable to only one fee for all of its locked boxes located in defendant city.*

This proposition is untenable. It is the general rule that where the same business is conducted at several different places the operator must procure the required license or pay the required tax for each establishment unless under the ordinance only one license or tax is required. (37 C.J. (1925) § 62, p. 210; *Goldstein* v. *State Revenue Com.,* 50 Ga.App. 317 [178 S.E. 164, 165]; *Drumright* v. *Strand Amusement Co.,* 139 Okla. 162 [282 P. 128]. *Cf. Bramman* v. *City of Alameda,* 162 Cal. 648, 653 [124 P. 243]; *Steuer* v. *City of Atlanta,* 176 Ga. 433 [168 S.E. 7].)

In the present case section 6.105 of the Long Beach License Code reads as follows:

''A separate license shall be obtained for each branch establishment or separate office or place for carrying on any business or pursuit specified in this ordinance, and the amount thereof, unless otherwise specified, shall be equal to the amount specified for carrying on the original business.''

Clearly under the foregoing section of the license code plaintiff could properly be required to pay a license fee for each *different place* where it conducted its business. There is no attempt by the city to impose a tax upon each locked box in the tier of the coin operated metal lock boxes at any place of business conducted by plaintiff.

(4) *The tax sought to be collected by defendant municipality is confiscatory and therefore void.*

This proposition is not sound. Plaintiff argues that since the amount it receives annually is approximately equivalent to the license tax, the license tax is confiscatory and therefore void. This position may not be sustained under the law of this state. The rule is established in California that a license tax imposing the same amount upon all engaged in the same business, regardless of business done or profits received therefrom, is not an unreasonable discrimination against any particular person engaged in the business because its net profit is less than that of others engaged in the same business or because the imposition of the tax may even result in some person engaged in the business operating at a loss. (*City of*

*Los Angeles* v. *Los Angeles Independent Gas Co.*, 152 Cal. 765, 768 [93 P. 1006], and cases therein cited; *Alaska Fish Salting & By-Products Co.* v. *Smith*, 255 U.S. 44, 48 [41 S.Ct. 219, 65 L.Ed. 489].)

 (5) *Section 3.355 of the Long Beach License Code imposes an illegal burden on interstate commerce.*

This proposition is devoid of merit. There is no allegation in the complaint that plaintiff is engaged in interstate business or that the depositors' lock boxes which it rents are used in interstate commerce. The test is not whether the activities affect or indirectly relate to interstate commerce, but whether they are actually in or so closely related to the movement of interstate commerce as to be a part of it. (*Barker Bros., Inc.* v. *Los Angeles*, 10 Cal.2d 603, 609 [76 P.2d 97]; *Schroepfer* v. *A. S. Abell Co.*, 138 F.2d 111, 113.) So far as appears in the record in the instant case there is nothing to indicate that plaintiff's lock boxes are actually or closely related to the movement of interstate commerce.

*Cooney* v. *Mountain States Tel. & Tel. Co.*, 294 U.S. 384 [55 S.Ct. 477, 79 L.Ed. 934], relied on by plaintiff, is factually distinguishable from the instant case. In such case the State of Montana attempted to impose a license tax based upon the number of telephone instruments used in the telephone service in that state without regard to its character as intrastate or interstate business. Since the same instruments and equipment were in the command of the customers for either intrastate or interstate service, the court held that the licensing statute must distinguish between the intrastate and interstate character of the business. Clearly the present situation is not analogous to that which obtained in the case just mentioned.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 5, 1946. Edmonds, J., and Schauer, J., voted for a hearing.

[Crim. No. 4001. Second Dist., Div. Two. July 9, 1946.]

THE PEOPLE, Respondent, v. ERNEST J. GATLIN,
Appellant.

Maurice A. Gleason for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of grand theft, after trial before the court without a jury, defendant appeals. There is also an appeal from an order denying his motion for a new trial.

The evidence being viewed in the light most favorable to

the People (respondent), and pursuant to the rules set forth in *People* v. *Pianezzi*, 42 Cal.App.2d 265, 269 [108 P.2d 732], the essential facts are:

At about noon on September 19, 1945, the complaining witness, Mr. Gabriel, cashed two liberty bonds and two pay checks at the Security First National Bank in San Pedro. He then started toward the postoffice and at the intersection of Seventh and Pacific Streets he met a brown skinned man, hereinafter referred to as "B.S.M." This man engaged Mr. Gabriel in conversation. At the same time he noticed defendant standing near by. B.S.M. had what appeared to be $8,000. He seemed to be ignorant and illiterate and also acted as though he were drunk. While Mr. Gabriel was talking to him, defendant walked by and B.S.M. called to him, "Hey, you, come here," whereupon defendant joined the group. In the ensuing conversation defendant told B.S.M. not to exhibit his money on the street. As Mr. Gabriel walked toward the postoffice the two men accompanied him. They talked about money and women. When they reached a point about the middle of the south side of Seventh Street between Grand and Pacific Streets, B.S.M. asked the complaining witness to hold his money and when Mr. Gabriel told him to put the money in the bank, B.S.M. stated that he wished to store the money for only two or three days. Thereupon he offered to give Mr. Gabriel $1,000 if he would hold his money for three or four days and added "to prove your good faith, have you got $1000?" to which Mr. Gabriel gave an affirmative answer. B.S.M. then said, "You draw that $1000 and put it with mine and take it all home and keep it until I call for it." At first Mr. Gabriel refused to draw any of his own money out of the bank but said he would hold the $8,000 for B.S.M. to whom he would give his address. Thereafter defendant persuaded Mr. Gabriel to draw his own money from the bank saying, "I don't know if he is half crazy or drunk, but he has got about $8000 on him. Why don't you keep it?" When Mr. Gabriel stated his intention to leave, defendant said, "Wait a minute, don't leave," and urged Mr. Gabriel as follows:

"Go ahead and draw it, we might as well get it. Somebody else will knock him in the head and take his money. He wants you to take it and keep it three or four days for $1000.00. . . . That is easy money and we will split the money. . . . He's got all his money, about $8000 and he wants you to keep his money. He's offered to give you $1000. · Go ahead and draw

your money and prove to him you are in good faith, and take it on home and we will split it. You can give me as much as you want."