[L. A. No. 28708. In Bank. June 19, 1967.]

WILLINGHAM BUS LINES, INC., Plaintiff and Appellant, v. THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL DISTRICT OF SAN DIEGO COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

894

Procopio, Price & Cory, Procopio, Cory, Hargreaves & Savitch and Alfred G. Ferris for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Edward T. Butler, City Attorney, and C. M. Fitzpatrick, Deputy City Attorney, for Real Party in Interest and Respondent.

TOBRINER, J.—The City of San Diego exacts a variety of license taxes from enterprises doing business there.[1] As

---

[1] "There is hereby imposed upon the businesses, trades, callings and occupations in this article enumerated a license tax or fee in the amount hereinafter specified, and it shall be unlawful to conduct, manage or carry

applied to charter vehicles for hire, the city imposes its tax upon apportioned gross receipts.[2] The plaintiff, a corporation which furnishes charter buses for hire, contends that the application of this taxing system to its San Diego operations invades a field preempted by state law and transgresses constitutional guarantees. We have concluded that these contentions cannot stand.

The present controversy arose when the state filed a criminal complaint charging the plaintiff with conducting a charter bus service in San Diego without the required municipal license. The plaintiff demurred to the complaint and sought a writ of prohibition to restrain further proceedings in the criminal action. After considering the case on an agreed statement of facts, the trial court refused to grant the relief requested. The plaintiff appeals.

■ We cannot accept plaintiff's contention that its state permit as an intercity charter bus operator[3] renders it immune to the San Diego tax. Although the state might have occupied the regulatory field then it established a comprehensive system for licensing and controlling charter carriers, it did *not* preempt the power to tax. Thus we have said,

---

on any such business . . . without having first secured a license so to do as herein provided.'' (Mun. Code, § 31.0301.)

[2] ''Every person conducting, managing, or carrying on the business of running or operating a charter vehicle for the transportation of passengers for hire when driven by the owner or a representative of the owner at rates per mile, per trip, per hour, per day, per week, or per month, where such vehicle is routed under the direction of such passenger or passengers or of such person hiring the charter vehicle, shall pay a tax as follows:

(a) Two per cent (2%) of the gross receipts received from such charter or charters.

(b) Said tax shall be paid quarterly.

(c) 'Gross Receipts' shall mean, for the purposes of this section, all receipts from such charter or charters when the vehicle is chartered for use wholly within the City of San Diego. When any such vehicle is chartered for use partly within and partly without the City of San Diego, gross receipts shall be apportioned upon a mileage basis and in such case 'Gross Receipts' shall mean, for the purposes of this section, the apportioned receipts attributable to the mileage operated within the City of San Diego.

(d) Where mileage is both within and without the City of San Diego, it shall be the responsibility of the person conducting, managing, or carrying on the business to maintain detailed records of the origination, destination, route, total mileage, mileage outside the city, and gross receipts for each charter trip where the mileage is not wholly within the City of San Diego. In the event such records are not maintained, then it shall be presumed that all the mileage occurred within the City of San Diego.'' (Mun. Code, § 31.0346.1.)

[3] Passenger Charter-party Carriers' Act (Pub. Util. Code, §§ 5351-5419).

"Whether or not state law has occupied the field of regulation, cities may tax businesses carried on within their boundaries and enforce such taxes by requiring business licenses for revenue and by criminal penalties." (*In re Groves* (1960) 54 Cal.2d 154, 156 [4 Cal.Rptr. 844, 351 P.2d 1028]; see also *Agnew* v. *City of Los Angeles* (1961) 190 Cal.App.2d 820, 828-830 (hg. den.) [12 Cal.Rptr. 507]; *Arnke* v. *City of Berkeley* (1960) 185 Cal.App.2d 842 (hg. den.) [8 Cal.Rptr. 645].)

The San Diego license tax in no sense constitutes "an inseparable part of a regulatory scheme excluded by state law." (*In re Groves, supra,* 54 Cal.2d at p. 157.) It makes no attempt to "prescribe qualifications . . . different from or additional to those prescribed by the state." (*In re Galusha* (1921) 184 Cal. 697, 699 [195 P. 406]; cf. *Agnew* v. *City of Los Angeles* (1952) 110 Cal.App.2d 612, 619-621 [243 P.2d 73]; 44 Ops. Cal.Atty.Gen. (1964) 117, 118-121.) It simply provides "an increase in . . . revenue by imposing a tax upon those who, by pursuing their [business] within [the municipality, derive] benefits from the advantages especially afforded by the city." (*In re Galusha, supra,* 184 Cal. at p. 699.)[4]

Indeed, plaintiff concedes that San Diego could properly impose a tax upon the business which it conducts within city limits; it contends only that the license fee here exacted as a condition precedent to doing business in San Diego constitutes "a charge . . . for the use of [the city's] streets" rather than "a reasonable tax for the privilege of engaging in business within its boundaries." We cannot agree.

The license tax charged by San Diego equals "2% of the gross receipts attributable to the portion of the trip traveled within the city limits . . . by charter vehicles."[5] This method of allocation obviously works to confine the tax to that part of a licensee's revenue which is derived from intracity business.[6] Since the city has not linked its license tax to the

---

[4]We attach no significance to the fact that the licensing provisions themselves proclaim that they are "enacted solely to raise revenue for municipal purposes and are not intended for the purpose of regulation." (Mun. Code, § 31.0101.) We are concerned here with the practical operation of the code sections, not with their labels.

[5]Agreed Statement of Facts, p. 1.

[6]In so doing, it avoids discrimination against multi-city enterprise since it minimizes the risk of multiple taxation. (Cf., e.g., *City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823, 832 [271 P.2d 5], app. dism. (1955) 348 U.S. 907 [99 L.Ed. 711, 75 S.Ct. 292]; *Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441, 451-454 [256 P.2d 366, 257 P.2d 755], and cases there discussed.)

number of charter vehicles passing through San Diego (contrast *Biber Elec. Co.* v. *City of San Carlos* (1960) 181 Cal. App.2d 342 [5 Cal.Rptr. 261] [one dollar per vehicle]) or to the total mileage travelled by such vehicles within the city, that fee cannot be considered a charge for the use of San Diego streets.[7]

Having concluded that the tax in question invades no area of exclusive state concern, we turn to the plaintiff's constitutional contentions. ■ In support of the argument that the statute defines the tax too vaguely to comport with due process, plaintiff simply points to a dispute over the precise meaning of the word ''mileage'' in the taxing provision.[8] If the mere existence of such a controversy could render a tax void for vagueness, no statute could ever withstand constitutional attack. No infirmity of constitutional dimension arises from the alleged marginal ambiguities.

■ We come, then, to the plaintiff's final challenge, one couched in terms of equal protection. The plaintiff urges that we invalidate the license tax on the ground that other businesses, including other kinds of vehicles for hire, are taxed not upon apportioned gross receipts but upon various other bases.[9] The plaintiff has not attempted to establish that these disparate formulae for taxation work a concrete hardship upon charter bus lines; the equal protection argument must therefore stand or fall with the novel proposition that a municipality is powerless to employ more than one method of computing taxes for various businesses unless it can demonstrate some compelling justification for doing so.

So narrow a view of municipal power, and so expansive a reading of the equal protection clause, would require a radical departure from the settled breadth of legislative authority to

---

[7] We need not decide whether such a charge would intrude the city into a state-occupied field. (See 44 Ops. Cal.Atty.Gen., *supra,* at pp. 121-122).

[8] The plaintiff notes that the city has instituted a civil action to collect delinquent license fees and that in ancillary declaratory proceedings the city and the plaintiff have differed as to the proper computation of mileage.

[9] For example, taxicabs pay an annual fee of $100 per unit; persons who operate automobiles for hire pay half that amount; those who operate sightseeing autos and buses pay a fixed sum of $200 per year plus an additional amount per vehicle, computed in terms of seating capacity; the owners of charter boats and planes, sightseeing boats, and various ''other trades, callings, occupations, vocations [and] professions'' (Mun. Code, § 31.0395) pay an annual tax of $10 plus $1 per employee.

draw distinctions for purposes of taxation. (See, e.g., *First Unitarian Church* v. *County of Los Angeles* (1957) 48 Cal.2d 419, 432-433 [311 P.2d 508]; *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 141-144 [222 P.2d 879]; *County of Los Angeles* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 388-392 [196 P.2d 773]; *Crocker-Anglo Nat. Bank* v. *Franchise Tax Board* (1960) 179 Cal.App.2d 591, 595 [3 Cal.Rptr. 905].)

The proposed departure from precedent seems particularly inappropriate today. "As our social and economic life grows in complexity, legislation necessarily increases in the differentiation of its techniques and in the specialization of its objectives." (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 364 [55 Cal.Rptr. 23, 420 P.2d 735].) Now, more than ever, courts must not burden those who formulate tax policy with Procrustean requirements of absolute equality.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke J., and Sullivan J., concurred.

Appellant's petition for a rehearing was denied July 19, 1967.