[Civ. No. 8526. Fourth Dist., Div. One. July 25, 1967.]

WEB SERVICE COMPANY, INC., Plaintiff and Respondent, v. MAYBELLE E. SPENCER et al., Defendants and Appellants.

Joseph B. Geisler, City Attorney, and Furman B. Roberts, Deputy City Attorney, for Defendants and Appellants.

Baker, Ancel & Redmond and Mark G. Ancel for Plaintiff and Respondent.

COUGHLIN, J.—This is an appeal from a judgment in a mandamus proceeding decreeing issuance of a writ of mandate directing Maybelle E. Spencer, as treasurer and license collector of the City of Anaheim, a respondent in the proceeding, to issue a business license to Web Service Company, Inc., the petitioner in the proceeding.[1]

The issues on appeal concern the applicability and constitutionality of the provisions of the Anaheim Municipal Code imposing a license tax on the "business of leasing, letting the use of, renting or maintaining any machine or device which . . . upon the insertion of any coin . . . performs any services." Section 3.36.020 of the code which was adopted in 1963, fixes the tax, for the purpose at hand, at $1.00 per machine per year; provides that the person carrying on such business "may elect to pay a license tax under Classification 'C' of Section 3.08.010, measured by gross receipts from business done within the City of Anaheim"; and also provides "that such gross receipts payment shall be subject to the provisions of Section 3.04.090." Sections 3.08.010 and 3.04.090 had been adopted in 1958; the former provided a method for determining the amount of a license tax payable by persons conducting business under a classification designated "C" based on a percentage of gross receipts, in accordance with a prescribed graduated scale, with a minimum tax of $25 per year; and the latter provided that a "separate license must be obtained for each branch establishment or location of the business transacted and carried on."

Web Service Company, Inc., petitioner, is engaged in the business of furnishing and maintaining coin-operated laundry machines, i.e., washers and driers; locates these machines in wash rooms at apartment houses, motels and trailer courts; has its principal place of business in Los Angeles, where its administrative affairs are conducted; and employs route men whose duties are to maintain and collect the proceeds from the machines. The person operating this type of business is known as a "route operator." On December 31, 1963, peti-

---

[1]The mandamus proceeding was instituted by Web Service Company, Inc., petitioner, against Maybelle E. Spencer, as treasurer and license collector of the City of Anaheim, and the City of Anaheim. Only the city treasurer answered. The petition was not served on the city. The judgment is against the treasurer, the city and the city attorney. The appeal is by the "defendants" in the proceeding.

tioner owned and maintained 693 machines in the City of Anaheim, consisting of 347 washers and 346 driers, at 261 locations. Its gross income from this business for 1963 was $100,-652.75. In 1964 petitioner owned and maintained 700 machines in the City of Anahcim at 260 locations. Its gross income therefrom for that year was $111,802.35. The tax computed under the gross receipts provisions of the ordinance is based on the gross receipts for the preceding calendar year; the tax computed under the per-machine provision is based on the number of machines in operation during the fiscal year commencing July 1st. In 1965 petitioner tendered the city treasurer an amount computed under the gross receipts provisions of the ordinance on the basis it was required to obtain only one license; contended the provisions of the ordinance requiring a separate license for each ''branch establishment or location'' did not apply to route operators; and demanded issuance of a license. The city treasurer acknowledged receipt of the amount tendered; indicated willingness to apply this amount to the tax payable under the per-machine provision of the statute; contended petitioner was operating at 261 locations which would require a minimum payment of $25 for each location; and refused to issue a license covering its total operation. Thereupon petitioner instituted the proceeding resulting in the judgment which is the subject of this appeal.

At the trial petitioner presented evidence showing the coin operated laundry machine business is conducted in two ways, one being a route operation, such as that conducted by petitioner, where two to four machines are located in wash rooms, and the other being a ''laundromat'' operation where 30 to 32 machines are located in a store room; the route operator's business is confined to occupants of an apartment house, motel or trailer court where the operation is conducted; the ''laundromat'' is patronized by the general public; during the year 1963 each of six ''laundromat'' operators paid a license tax in the maximum amount of $25.33 and the minimum amount of $25, computed under the gross receipts provisions of the ordinance upon a gross receipts maximum of $25,824.[2] The route operator pays the owner of the apartment house, motel or trailer court where his machines are located between 20 percent and 25 percent of the receipts; the ''laundromat''

---

[2]The court found that the number of ''washers'' in the ''laundromat'' locations was between 30 and 35; and also found that the ''receipts'' from these ''laundromats'' was between $18,000 and $45,000 annually; but the only evidence respecting these facts is that produced by petitioner as noted.

operator pays a rental approximating 25 percent of receipts. Petitioner, as a route operator, grossed approximately $12 per month per machine; the "laundromat" operators grossed between $900 and $2,000 a month per location, with an average of $1,500 a month, or, on the basis of 30 machines, at the rate of $50 a month per machine; the route operator and the "laundromat" operator are in competition with each other; on occasions some "laundromat" operators have offered the use of driers free, and in competing wash room locations petitioner has met the effect of this offer on its business by also giving free drier service; and another route operator in the City of Anaheim paid a tax in the amount of $143 based on the per-machine provisions of the ordinance.

The court found, among other things, that "on the basis of $25.00 per washroom, the approximate tax sought of Petitioner by Respondent would be $6,500.00 per year"; that "calculated on the basis of classification C of Section 3.08.010 . . . Petitioner would be required to do a gross volume of $60,000,000.00 per year within the City of Anaheim in order to arrive at a tax of such magnitude"; that "the washrooms in the various apartments, motels and trailer parks, wherein Petitioner maintains its machines, do not constitute branch establishments or locations within the meaning of Section 3.04.090"; that "to hold that each washroom requires a payment . . . of a minimum of $25.00, has no reasonable relationship to the difference if any, in the amount of business done by Petitioner by reason of any difference in the method of its operation, if such difference does exist"; that "Petitioner's expense of operation is virtually identical to that of 'laundromats' "; and that "the mode and method of Petitioner's operation is that which is the attempted basis of the imposition of the $25.00 per washroom tax under Section 3.04.090, as interpreted by the Respondent."

The court concluded that when seeking to apply section 3.04.090 to petitioner to compel it to pay a tax of $25 per washroom, respondent applied the ordinance in an unconstitutional manner in that "such tax asserted to be due by the Respondent bears no relation to the amount of business done in the City of Anaheim on the part of Petitioner, and has no reasonable connection with the taxable event occurring in the city, namely, the quantum of business carried on by Petitioner in the city"; that the effect of respondent's interpretation of the ordinance "is to remove from the Petitioner the option to pay $1.00 per machine tax on its machines, or to pay a license

tax based upon the basis of gross receipts from all business done in the City''; that, therefore, ''Petitioner is discriminated against and the Respondent, by her action in seeking to deny to the Petitioner its option to pay the tax on a per machine basis or on the basis of gross receipts, has violated the provisions of the Fourteenth Amendment of the United States Constitution respecting equal protection of the laws and the provisions of the California Constitution''; that, therefore, ''Section 3.04.090, as applied by the Respondent to Petitioner, is discriminatory and void''; respondent is under a duty to issue a business license to petitioner for the year 1965; and that respondent be ordered to issue such a license.

In reality, petitioner claims the route operator and the ''laundromat'' operator are engaged in the same business; the tax ordinance, as enforced by the city, in practical effect, applies one measure of tax to the ''laundromat'' operator and another measure to the route operator resulting in the imposition of a higher tax upon the latter; and in this manner, as a route operator, it is denied equal protection of the law.

Although not clearly stated by petitioner or the court, it would appear the position of the former and the decision of the latter are premised upon the concept the ordinance is unconstitutional if it requires a separate license for each operating location maintained by petitioner and, for this reason, the section of the ordinance requiring a separate license either should be held invalid, leaving in force the balance of the ordinance, or should be interpreted as inapplicable to petitioner's type of operation.

■ There is no rational basis for concluding the provision requiring a separate license for each branch establishment or location of a business subject to a license tax, i.e., section 3.04.090, does not apply to petitioner's method of doing business. Section 3.36.020, which imposes a license tax on persons engaged in the business of furnishing and maintaining coin-operated machines based on the number of machines in operation in the city and affords the taxpayer an option of computing the tax on a gross receipts basis, with a $25 minimum, specifically provides that payment of the tax based on the gross receipts shall be subject to the provisions of section 3.04.090, which requires a separate license for each business location. The optional method of computation applies only to gross receipts from a business location within the city. Petitioner may not contend it has no business location within the

city, otherwise it would not be entitled to apply the gross receipts computation. If the separate license requirement does not apply to separate laundromat locations section 3.04.090 has no effect. No basis exists for so holding. On the other hand, there is no reason for holding that a ''laundromat'' where 30 machines are operated is a business location within the meaning of the optional proviso, but that a washroom where 2 or 4 machines are operated is not such a location. The statute does not relate a business location to the number of machines operated at a particular site nor to the method of operation. We conclude each washroom location maintained by petitioner was a location of its business within the meaning of the ordinance. (Cf. *American Locker Co.* v. *City of Long Beach,* 75 Cal.App.2d 280 [170 P.2d 1005].) Petitioner's arguments to the contrary are without merit.

Thus, the determinative issue on appeal is whether the ordinance, as applied to petitioner, violates constitutional guarantees.

■ The equal protection guarantee of the Constitution does not impose a rigid rule of equality in tax legislation; permits a classification of businesses for tax purposes providing the classification is not arbitrary; and, subject to the limitations hereinafter noted, does not foreclose the use of different tax rates, or different methods of tax computation, for businesses in different classifications. (*Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509 [81 L.Ed. 1245, 1252, 57 S.Ct. 868, 872, 109 A.L.R. 1327]; *Willingham Bus Lines, Inc.* v. *Municipal Court,* 66 Cal.2d 893, 897 [59 Cal.Rptr. 618, 428 P.2d 602]; *Sivertsen* v. *City of Menlo Park,* 17 Cal.2d 197, 203 [109 P.2d 928]; *Barker Bros., Inc.* v. *City of Los Angeles,* 10 Cal.2d 603, 607 [76 P.2d 97]; *Ex parte Lemon,* 143 Cal. 558, 563 [77 P. 455, 65 L.R.A. 946]; *City of San Mateo* v. *Mullin,* 59 Cal.App.2d 652, 659 [139 P.2d 351].)

■ Thus a municipality may impose license taxes in different amounts on different classes or subclasses of business providing the classifications adopted are based on distinctions that are reasonably related to the object of the taxing ordinance (*Fox, etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136, 142, 143 [222 P.2d 879]; *Bramman* v. *City of Alameda,* 162 Cal. 648, 653 [124 P. 243]; *National Schools* v. *City of Los Angeles,* 135 Cal.App.2d 311, 326 [287 P.2d 151]; *Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720, 733 [57 P.2d 1022]); the tax imposed applies to all businesses within the classification. (*Bram-*

*man* v. *City of Alameda, supra,* 162 Cal. 648, 653; *American Locker Co.* v. *City of Long Beach, supra,* 75 Cal.App.2d 280, 286) ; and the difference in the taxes is not unreasonably discriminatory, confiscatory or used as a subterfuge to eliminate competition. (*Silvertsen* v. *City of Menlo Park, supra,* 17 Cal. 2d 197, 200; *Barker Bros., Inc.* v. *City of Los Angeles, supra,* 10 Cal.2d 603, 607; *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405, 408 [65 P.2d 884, 109 A.L.R. 895].)

Where the tax is imposed upon all members of a class or subclass the ordinance imposing such is valid even though the amount charged is a greater burden on one business than on another. (*Los Angeles* v. *Los Angeles etc. Co.,* 152 Cal. 765, 768 [93 P. 1006] ; see also *National Schools* v. *City of Los Angeles, supra,* 135 Cal.App.2d 311, 326.) In this regard the court said in *American Locker Co.* v. *City of Long Beach, supra,* 75 Cal.App.2d 280, 286: "The rule is established in California that a license tax imposing the same amount upon all engaged in the same business, regardless of business done or profits received therefrom, is not an unreasonable discrimination against any particular person engaged in the business because its net profit is less than that of others engaged in the same business or because the imposition of the tax may even result in some person engaged in the business operating at a loss."

In some instances a distinction between essentially different methods of conducting the same general character of business may afford a proper basis for classifications subject to different methods of computing a tax upon a common basis, such as the amount of business done or income received. (*Ex parte Lemon, supra,* 143 Cal. 558, 562; *City of San Mateo* v. *Mullin, supra,* 59 Cal.App.2d 652, 655-656.)[3] Thus, ordinances providing different methods of computing taxes against businesses of the same general character have been upheld against constitutional attack where the ordinance imposed a flat fee per business location in the community and, absent such, a unit fee per automobile used in the business (*E. A. Hoffman Candy Co.* v. *City of Newport Beach,* 120 Cal. App. 525, 528 [8 P.2d 235] ) ; a flat fee per lawyer for an individual practitioner proportionately larger in amount than the fee for a firm of lawyers based on a graduated scale depending

[3]As noted in *E. A. Hoffman Candy Co.* v. *Newport Beach,* 120 Cal.App. 525, 531 [8 P.2d 235], in reality the distinction noted in the cases dealing with this subject is based upon differences in the business conducted rather than the method of conducting business.

on the number of lawyers in the firm (*City of San Mateo* v. *Mullin, supra,* 59 Cal.App.2d 652, 655) ; different fees for a restaurant employing only members of the owner's family and that employing outsiders (*Ex parte Lemon, supra,* 143 Cal. 558, 561) ; a flat fee for all engaged in the retail butcher business and an additional fee for those using vehicles in the business based on the number of vehicles used (*Bramman* v. *City of Alameda, supra,* 162 Cal. 648, 653) ; and different fees for those with and those without a fixed place of business. (*Ex parte Haskell,* 112 Cal. 412, 417 [44 P. 725, 32 L.R.A. 527].) The decision in *Matter of Application of Richardson,* 170 Cal. 68 [148 P. 213], upon which petitioner relies, does not dictate a contrary conclusion.

An approved basis for determining the amount of license tax is the amount of business done by the taxpayer, which may be computed in different ways. (*Bramman* v. *City of Alameda, supra,* 162 Cal. 648, 653 — where the amount of the tax was based on the number of vehicles used in the retail butcher business; *County of San Luis Obispo* v. *Greenberg,* 120 Cal. 300, 304 [52 P. 797] — where the tax was computed on the amount of receipts; *Ex parte Li Protti,* 68 Cal. 635, 636 [10 P. 113] — where the computation was based on the number of persons employed in a laundry; and *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541, 543 [233 P.2d 671] —where the computation was based on the capacity and number of trucks used in the trucking business.)

Where the business is operated at different locations a license may be required for each location. (*American Locker Co.* v. *City of Long Beach, supra,* 75 Cal.App.2d 280, 286.)

The ordinance in the case at bench, considered in light of the foregoing rules, presents dual aspects. In the one it creates a classification for all persons engaged in the business of furnishing and maintaining coin-operated service machines and prescribes alternate methods of computing the tax which may be reasonably related to net income as a common basis. In the other, it creates subclassifications for persons conducting coin-operated laundry machines; places in one classification route operators and in the other "laundromat" operators; and, in practical effect, prescribes a different method of calculating the tax payable by the persons in each classification. In either aspect the ordinance complies with the equal protection requirements heretofore noted.

On its face the ordinance imposes a tax upon all persons engaged in the business of furnishing and maintaining coin-

operated service machines in an amount determinable by a formula which the taxpayer is given the option to select. As applied to laundry machines, the route operator and the "laundromat" operator each is given the option to select the formula for determining his tax. Thus, the ordinance applies equally to all persons within the class. Petitioner was not required to select the gross receipts formula for determining the amount of its tax. On the other hand, if it chose this formula, it chose that part thereof prescribing a $25 minimum tax for each business location. Petitioner contends it was not given the option to choose between a tax measured by the per-unit formula and a tax measured by gross receipts if it was required to include the $25 minimum per location requirement of the gross receipts formula. This contention, in substance, is premised upon the claim the gross receipts formula as applied to the "laundromat" operator does not include the $25 minimum per location provision. However, the evidence showed several "laundromat" operators did not have gross receipts requiring payment of an amount exceeding the minimum fee. Petitioner argues, following the facts found by the trial court, if it were required to pay the per location minimum fee it would be paying a tax equivalent to that based upon a gross income of sixty million dollars per year which, in light of the gross receipts of the "laundromat" operators and the tax they pay, is proof of the discrimniatory nature of the ordinance. This argument disregards the fact the number of machines in each "laundromat" operator's place of business, which are the source of his receipts, is between 30 and 32, whereas the number of machines in petitioner's places of business, which are the source of its gross receipts, is 700. If the "laundromat" operator's receipts were from 700 machines in "laundromats," each having 30 machines, he would be conducting business in 23 locations, and under the gross receipts formula would pay a minimum tax of $575. The maximum tax required of petitioner by the ordinance was $700, which was that fixed by the use of the per-unit formula. In those locations where petitioner, to meet competition, furnished the services of its driers free of charge, thus eliminating the coin operating aspect thereof, its tax based on the per-unit formula would have been reduced accordingly. Petitioner chose its manner of operation to compete with the "laundromat" operator. The ordinance equates the tax burden between these two types of operation. The fact that in some instances the amount of tax payable by one operation was not precisely comparable to the amount

of tax paid by the other does not render the ordinance invalid.

Furthermore, apparent although not proven factors, hereinafter considered, indicate the objective of the ordinance is to equate the tax burden upon the common basis of net income, and the optional methods of computation are a means of applying this common basis to the business done within the city.

The aforesaid apparent factors also are relevant to a determination whether the route operators and the "laundromat" operators may be classified as such for the purpose of applying different tax computation methods resulting in tax burdens seemingly unequal. If these classifications meet constitutional requirements the fact the tax imposed on one class may be greater than the tax imposed on the other does not invalidate the ordinance. (*Carmichael* v. *Southern Coal & Coke Co., supra,* 301 U.S. 495, 509 [81 L.Ed. 1245, 1252, 57 S.Ct. 868, 872, 109 A.L.R. 1327] ; and other cases heretofore cited.)

When classifications provided by a license tax ordinance are attacked on constitutional grounds, every intendment and presumption is in favor of upholding them. (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 141, 142; *Sivertsen* v. *City of Menlo Park, supra,* 17 Cal.2d 197, 201; *Ex parte Haskell, supra,* 112 Cal. 412, 416; *National Schools* v. *City of Los Angeles, supra,* 135 Cal.App.2d 311, 325; *Roth Drug, Inc.* v. *Johnson, supra,* 13 Cal.App.2d 720, 733.) In *People* v. *Western Fruit Growers,* 22 Cal.2d 494, 507 [140 P.2d 13], the court said: "When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification." (See also: *Sacramento Municipal Utility Dist.* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 684, 693 [128 P.2d 529] ; *Bilyeu* v. *State Emp. Retirement System,* 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442].)

It is conceivable the city council had knowledge of facts supporting the conclusion that although the per-machine *gross income* of the route operator on the average is less than the per machine *gross income* of the "laundromat" operator, the washroom operation of the former is less expensive than the store room operation of the latter; that although the percentage of gross receipts paid the owner of the washroom by the route operator approximated the amount of rent paid by the "laundromat" operator, the former received in return not only the privilege of using the washroom but also received,

without further charge, janitorial services, light and heat for the washroom, water, electrical power and other utilities necessary to operate the machines; that the cost of maintaining the larger number of machines proportionately is less than the cost of maintaining a few machines; that the repair and replacement expense due to misuse, breakage and deterioration of the machines used by a select group of patrons in a semi-private location is less than that of machines used by the general public in a public location; that under these circumstances the route operation yields a greater percentage of gross income as profit than does the "laundromat" operation; that for these reasons, a gross receipts computation alone would not afford a basis upon which to equate the tax burden between the route operator who has many locations in the taxing territory and the "laundromat" operator who has one location; and that a reasonable method of apportioning the tax burden between them was to afford the optional method of computation provided by the ordinance.[4] ▮▮▮ Even assuming the ordinance, in practical effect, imposes a tax on route operators based on the per-machine formula and a tax on "laundromat" operators based on the gross receipts — single location formula, the resultant classification tends to equalize the tax burden imposed; is reasonably related to the object of the legislation, which is the imposition of a tax upon the business done within the city; is not arbitrary; and in all respects conforms to the rules heretofore noted. (Gen. See *Willingham Bus Lines, Inc.* v. *Municipal Court, supra,* 66 Cal.2d 893, 894-895.)

The sections of the ordinance under review are directed to the taxable event of doing business in the City of Anaheim; meet the requirement that the classification or measure of tax used shall be reasonably related to the objective of the legislation, viz., the taxable event; do not unlawfully discriminate against the route operator; do not impose a tax in an amount that is confiscatory or as a subterfuge to eliminate competition; and for these reasons are not subject to the objections

---

[4]Pertinent to the issue at hand is the statement of the court in *Ex parte Haskell, supra,* 112 Cal. 412, 418 [44 P. 725, 32 L.R.A. 527], upholding an ordinance imposing different taxes upon traveling salesmen and those conducting business at a fixed location in the city, that: "It may well be that to the knowledge of the city council the profits of such itinerant business, by reason of the fact that there are no rents, taxes, insurance, or other municipal charges to pay in its pursuit, are so much greater proportionately over the same amount of business done at a fixed place as to fully justify the difference in the tax imposed." (See also to a similar effect *Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 144.)

basic to the decisions relied upon by petitioner such as *Barker Bros., Inc.* v. *City of Los Angeles, supra,* 10 Cal.2d 603, 608, *Bueneman* v. *City of Santa Barbara, supra,* 8 Cal.2d 405, 408, 415; *Matter of Application of Richardson, supra,* 170 Cal. 68, *City of Los Angeles* v. *Drake,* 195 Cal.App.2d 744, 749 [16 Cal.Rptr. 103], *City of Los Angeles* v. *California Motor Transport Co.,* 195 Cal.App.2d 759, 764 [15 Cal.Rptr. 917], *City of Los Angeles* v. *Carson,* 181 Cal.App.2d 540, 545 [5 Cal.Rptr. 356], and *Security Truck Line* v. *City of Monterey,* 117 Cal. App.2d 441 [256 P.2d 366, 257 P.2d 755].[5]

The judgment is reversed.

Brown (Gerald), P. J., and Whelan, J., concurred.

A petition for a rehearing was denied August 8, 1967, and respondent's petition for a hearing by the Supreme Court was denied September 21, 1967.

---

[5]Presumably in support of its position, petitioner directs attention to the fact the license taxes imposed on the operators of french or hand laundries, on dry cleaning establishments, and on a corporation publishing a newspaper in the City that uses coin operated machines as one of its methods of distribution are based on a gross receipts computation; and also refers to the fact that in the past it and other similar operators have been issued a single license on payment of a tax computed under the gross receipts method. Suffice to say these facts are not pertinent to the issues at hand.