[Civ. No. 35330. First Dist.. Div. Two. Aug. 28. 1975.]

CITY OF SAN JOSE. Plaintiff and Respondent, v.
JOSEPH H. DONOHUE, Defendant and Appellant.

42

## COUNSEL

William Prather for Defendant and Appellant.

Peter G. Stone, City Attorney, and Clarence J. Shuh, Deputy City Attorney, for Plaintiff and Respondent.

Richard L. Knickerbocker, City Attorney (Santa Monica), and Rondrew A. Outlaw, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Plaintiff City of San Jose brought an action in small claims court against defendant Joseph Donohue, seeking to' recover the sum of $90.85 which was allegedly due under a city ordinance imposing a tax upon utility users. Defendant challenged the constitutionality of the ordinance, and the case was transferred to the superior court. (Code Civ. Proc., §§ 89, subd. (a)(1), 117.) The superior court upheld the validity of the ordinance and entered judgment for plaintiff city in the amount of $90.85, plus interest and costs. Defendant Donohue has appealed from that judgment.

The San Jose ordinance here under review (Ordinance No. 15285, as amended by Ordinance No. 15639) provides that every person[1] within the city shall pay a tax in the amount of 5 percent of the charges made for such person's use of telephones, gas, water and electricity. The ordinance provides that the tax shall be collected by the utilities, along with their regular monthly bills, and forwarded to the city. If a utility user refuses to pay the tax for 4 consecutive months, he receives a 15-day demand notice from the city. Upon his failure to remit the tax

---

[1] The term "person" is defined in section 17000 of the ordinance to include "natural persons, domestic and foreign corporations, associations, syndicates, joint stock companies, partnerships of every kind, joint ventures, clubs, Massachusetts business or common law trusts and societies."

due within the required 15-day period, he then becomes subject to a penalty equal to 10 percent of the tax due or $10, whichever amount is greater.

The ordinance contains a provision[2] which exempts from the application of the utility tax "(1) the City, or (2) any person when imposition of such tax upon that person would be in violation of the Constitution of the United States or that of the State of California, or (3) the State, any county, municipal corporation, city and county, district or any political subdivision of the State of California."

At the trial in the superior court, defendant attacked the utility tax ordinance upon two grounds: (1) the ordinance, as written and applied, violated the equal protection and due process clauses of the United States Constitution because certain utility users were either exempt from taxation or paid a lesser amount of taxes than others; and (2) the penalty provision of the ordinance violated the due process clause of the United States Constitution because the amount of the penalty was arbitrary and excessive and bore no reasonable relationship to the amount of the tax owed by a particular utility user.

Defendant demonstrated at the trial that, in accordance with the exemption provision of the ordinance, no utility tax was assessed against any public entity. Likewise, the tax was not assessed against insurance companies or banks, which are exempt from such taxation under article XIII, sections 14 4/5 and 16,[3] of the Constitution of the State of California. Defendant also established that some individuals who leased premises from a public entity, insurance company or bank were not taxed on utility service furnished to the leased premises. In addition, it was shown that employees of public utilities received utility service at a reduced rate or, in some instances, free of charge, and that the utility tax was assessed only against the actual amounts billed to these individuals.

At the conclusion of the trial, the court rendered findings of fact and conclusions of law wherein it determined that the utility tax ordinance was constitutional and valid. A money judgment for the amount of the tax and penalty found to be due was entered in favor of plaintiff city. Defendant Donohue filed notice of appeal from that judgment.

[2]Section 17001.

[3]Section 16 was repealed November 5, 1974, and replaced by section 27.

On appeal, defendant takes the position that the constitutional arguments raised in the trial court were all sound and that that court erred in upholding the validity of the utility tax ordinance. We do not agree.

Defendant's first ground of attack upon the ordinance, as noted above, is that it is not applied equally to all utility users, and hence violates the equal protection and due process clauses of the federal Constitution.

The merits of this contention must be weighed in the light of certain well-established principles: ■ Absolute uniformity or equality in the application of tax measures can never be obtained. (*Willingham Bus Lines, Inc.* v. *Municipal Court* (1967) 66 Cal.2d 893, 897-898 [59 Cal.Rptr. 618, 428 P.2d 602]; *Los Angeles etc. Corp.* v. *Los Angeles* (1912) 163 Cal. 621, 626-627 [126 P. 594].) ■ A tax statute or ordinance which distinguishes between parties does not violate the equal protection or due process clause if the distinction rests upon a rational basis, and it must be presumed to rest on that basis if there is any conceivable state of facts which would support it. (*Ladd* v. *State Bd. of Equalization* (1973) 31 Cal.App.3d 35, 38 [106 Cal.Rptr. 885].) ■ A legislature is not bound to tax every member of a particular class or none (*Stevens* v. *Watson* (1971) 16 Cal.App.3d 629, 633 [94 Cal.Rptr. 190]), and it is constitutionally permissible to subdivide the class on the basis of the tax collectibility problem. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1019 [106 Cal.Rptr. 867].) ■ Administrative convenience and expense in the collection or measurement of a tax are alone a sufficient justification for treating some taxpayers differently than others. (*Carmichael* v. *Southern Coal Co.* (1937) 301 U.S. 495, 511 [81 L.Ed. 1245, 1254, 57 S.Ct. 868, 109 A.L.R. 1327].)

The question before us, therefore, is whether there is a rational basis for the nonapplicability of the utility tax in those instances of which defendant complains. We have no difficulty in concluding that there is.

We consider first the fact that the utility tax is not assessed against the city itself nor against any other public entity. ■ The exemption of other public entities from payment of the tax is clearly reasonable. In *Carmichael* v. *Southern Coal Co., supra,* at p. 513 [81 L.Ed. at p. 1255], where the validity of a state tax upon employers was at issue, the court pointed out that "The state may reasonably waive the formality of taxing itself or its political subdivisions. ■ Fear of constitutional restrictions, and a wholesome respect for the proper policy of another

sovereign, would explain exemption of the United States, and of the interstate railways . . . ." In this case, the trial court made the following findings concerning the exemption in favor of public entities: "Federal Government agencies paid no utility taxes as Federal law preempts such taxation. . . . Exemption for City property is a reasonable classification as it is merely transferring payments from one pocket of the City to another. . . . Counties and other public agencies were exempt from utility taxation and said exemption is a reasonable classification as such agencies are public-supported and would merely add to the tax burden of the same taxpayers as pay the utility tax." In all respects the trial court's reasoning is sound.

■ Insofar as defendant questions the existence of a rational basis for exempting insurance companies and banks from the application of the utility tax ordinance, it suffices to point out that article XIII, section 14 4/5 and former section 16, of the California Constitution, expressly prohibit the imposition of any such tax upon insurance companies and banks. A constitutional mandate provides a rational basis for tax exemption.

Defendant's final ground for claiming a lack of uniformity and equality in the application of the utility tax ordinance is based upon the fact that employees of utility companies, who receive utility service at a reduced rate or free of charge, pay a utility tax only on the amount billed to them by the utility companies and that certain persons who lease premises from public entities, insurance companies or banks pay no utility tax. These exemptions find their rational basis in the administrative convenience and expense involved in collecting and measuring the tax.

In *City of Modesto* v. *Modesto Irrigation Dist.* (1973) 34 Cal.App.3d 504, 508 [110 Cal.Rptr. 111], the appellate court upheld the right of the city to compel the suppliers of utility service to collect the city's utility tax from utility users: The court stated: "The power of a city operating under a home rule charter to levy a utility users' tax is a municipal affair and stems from the Constitution. (Cal. Const., art. XI, § 5; *Rivera* v. *City of Fresno, supra*, 6 Cal.3d 132, 135; *West Coast Adver. Co.* v. *San Francisco*, 14 Cal.2d 516, 521-522 [95 P.2d 138].) But, it is obvious that such city has no practical nor economical means of collecting such a tax without the cooperation of the supplier of the utility service. For example, to collect a mere 5 percent of the monthly or bi-monthly charges made by appellant districts for electrical energy supplied to city

users, the city would have to audit the books and records of each district on a monthly or bi-monthly basis in order to ascertain the exact charges made by the districts, and then the city would have to bill separately each user *or* the city would have to duplicate the meter reading and billing procedures of the districts *or* the city would have to canvass each user to find the amount charged. It seems clear to us that the cost of collection could, in many cases, exceed the tax bill and that a substantial part, if not all, of the city's tax revenue from the use of electrical energy by city consumers sold by the districts would be lost in the collection process.

"It is basic that the power to tax carries with it the corollary power to use reasonable means to effect its collection; otherwise, the power to impose a tax is meaningless. (*Ainsworth* v. *Bryant,* 34 Cal.2d 465, 476 [211 P.2d 564].)"

In this instance, the utility tax ordinance quite reasonably provides that the tax shall be collected by the utility companies, along with their regular monthly bills, and forwarded to the city. The director of finance for plaintiff City of San Jose testified that there are some 130,000 to 150,000 customers for each of the three major utilities, Pacific Gas and Electric Company, the San Jose Water Works and Pacific Telephone. Based upon a study made through a small water company owned by the city, it was determined that it would cost the city $6 per customer per year if the city were to attempt to send out its own bills for the utility tax. It is apparent that in many instances the cost of billing would exceed the amount of the 5 percent utility tax; thus, the only economically feasible solution consists of that which was adopted by the city, viz., the billing of the tax by the utility companies.

Since, as a matter of necessity, the city must utilize the existing billing systems of the utility companies, the city may not be charged with inequality in the administration of the tax merely because the utility companies furnish their employees with utility service at reduced rates or free of charge and reflect those benefits in their billings. Further, the evidence establishes that the number of utility company employees receiving such benefits constitutes an extremely small percentage of the total number of utility users whom the city is able to tax by utilizing the billing systems of the utility companies. For example, the evidence showed that the San Jose Water Works furnished free water service to a total of 99 persons, whereas there were between 130,000 and 150,000 customers of the water works. Plaintiff city correctly points out that,

assuming a monthly water bill of $10 per month, the 99 persons receiving free water service would, if subject to the utility tax, pay the city a total yearly sum of $6 apiece. The law disregards trifles. (Civ. Code, § 3533.)

■ The fact that some lessees of public entities, insurance companies and banks pay no utility tax, again results from administrative necessity. Thus, defendant established only that if a public entity, insurance company or bank owned and occupied a building and leased portions of said building to other persons and the building contained but one meter to measure the use of a particular utility, no utility tax was charged. There was testimony by a representative of the San Jose Water Works that the utility company was furnished by the city with a list of the utility users (public entities, insurance companies and banks) which were exempt from the utility tax. Where such exempt user was the owner and occupier of a building which contained other tenants as well, but only one water meter, there was no way for the water company to determine what portion of the water used was exempt from the utility tax and what portion was not. It was impossible, therefore, to assess a utility tax in such a situation. The evidence showed that representatives of the city had discussed this problem with the utility companies and had learned that single meters for buildings occupied by several tenants were permissible under the rules and regulations of the Public Utilities Commission and that the city could not require the utility companies to install separate meters in such buildings.

Here again, we are confronted with a situation where perfect equality of taxation is not possible of attainment. Clearly, there is a rational basis for the city's failure to tax tenants of buildings whose owners are exempt from the application of the utility tax. Thus, it follows that there is no merit to defendant's claim that the tax is applied in such a manner as to deprive him of equal protection or due process of law.

Finally, we consider defendant's contention that the penalty provision of the utility tax ordinance is arbitrary and excessive and hence unconstitutional. The gist of this argument is that the ordinance calls for a penalty of 10 percent or $10, whichever sum is greater, and can thus cause a situation where nonpayment of a tax in the amount of only a few cents results in the imposition of a $10 penalty.

In the early case of *Western Union Telegraph Co.* v. *Indiana* (1897) 165 U.S. 304 [41 L.Ed. 725, 17 S.Ct. 345], the United States Supreme Court upheld a state tax statute providing for the assessment of a penalty equal

to 50 percent of the amount of the unpaid tax assessed. The court rejected the argument that the penalty was arbitrary in amount and hence violative of the equal protection and due process clauses and held that the amount of the penalty was a matter for the state legislature to determine.

In *Jackson* v. *City of Glenwood Springs* (1950) 221 P.2d 1083, the Colorado Supreme Court upheld the constitutionality of a municipal ordinance imposing a $100 penalty for the failure to file an occupational tax return. The court stated, "We cannot adopt the contention of the plaintiffs, that the fines here imposed are clearly excessive. We believe the amount of the fines provided in this ordinance are within the area of legislative discretion." (P. 1085.)

Here, plaintiff city correctly points out that the evident purpose of the penalty is to induce prompt payment of the utility tax and that a penalty must be sufficiently substantial in amount if this result is to be achieved. Plaintiff also points out that the uncontradicted evidence established that the cost to the city of collecting a delinquent utility tax was $10.20, an amount in excess of the penalty. We conclude that the penalty is neither arbitrary nor excessive in amount.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied September 26, 1975, and appellant's petition for a hearing by the Supreme Court was denied October 23, 1975.